STATE of Wisconsin, Plaintiff-Respondent,

v.

Verian Faith MARTINEZ, Defendant-Appellant.

Court of Appeals

*No. 91-1489-CR. Submitted on briefs November 1, 1991.—Decided December 18, 1991.*

(Also reported in 479 N.W.2d 224.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert A. Adman, Esq.* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sharon Ruhly,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J. Verian Faith Martinez appeals from a judgment convicting her of delivery of a controlled substance, as a party to a crime, contrary to secs. 161.41(1)(h)1 and 939.05, Stats. The issue on appeal is whether the trial court correctly determined that the state had established good cause for its failure to comply with Martinez' discovery demand that the state produce a tape of Martinez' recorded statements as she allegedly participated in a sale of controlled substances. We conclude that the state did not establish good cause, within the meaning of sec. 971.23(7), Stats., for its failure to comply with Martinez' discovery demand. We reverse the judgment of conviction and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

We recite the facts and history of this case in some detail. Martinez' conviction arose out of an October 18, 1989 stake-out conducted by two investigators assigned to the Manitowoc County Metro Drug Unit. On that evening, Deputy Elijah Humphreys of the Manitowoc County Sheriff's Department and Officer John Scott Gerard of the City of Two Rivers Police Department made contact with then-confidential informant Shawn Frea for the purpose of planning and executing a controlled purchase.

Officer Gerard and Deputy Humphreys told Frea that they wanted him to attempt to purchase marijuana at a certain apartment in the city of Two Rivers. To that end, Officer Gerard searched Frea and gave him $100 in twenty dollar bills. The bills had been previously photocopied for identification purposes. Deputy Humphreys then fitted Frea with a body microphone so that he and Officer Gerard could monitor and tape record Frea's conversations inside the apartment from their surveillance car, parked outside.

Once inside the apartment, Frea encountered three adults—Martinez, Anthony Herring and Patricia Wetzel. Herring told Frea he could obtain marijuana for him. The two agreed that Herring would sell an eighth of an ounce of marijuana to Frea for $25. Frea gave Herring two of the five twenty dollar bills. Martinez asked Frea if the money had been photocopied. Frea said that it had not. Herring and Martinez prepared to leave the apartment to fetch the marijuana. Frea testified at trial that as they turned to go, Martinez told him he "better not be a snitch because I'm driving the car."

Meanwhile, Deputy Humphreys left the surveillance car and positioned himself so that he could watch as

Herring and Martinez left the building. He observed the pair enter Martinez' car and drive away, with Martinez at the wheel. About forty to forty-five minutes later, Deputy Humphreys watched as Herring and Martinez returned with Martinez again driving. The pair reentered the apartment building. Deputy Humphreys rejoined Officer Gerard in the car in time to overhear Frea and Herring discussing making change for a twenty dollar bill. Herring and Frea completed the transaction, and Frea left the apartment.

Deputy Humphreys then drove to the Two Rivers police department, where he dropped off Officer Gerard and Frea, and then to the Manitowoc County Sheriff's Department where he unloaded the listening equipment from the car. He removed the tape of the conversations in the apartment, labeled it and placed it in a box reserved for other such tapes.

The preliminary hearing was held on April 19, 1990. At this hearing, Deputy Humphreys was asked if the tape still existed. He responded he "would have to check." Around the same time,[1] Martinez' trial counsel, Attorney Marshall Haller, served a discovery demand on the district attorney's office seeking, among other things, production of "any . . . recorded statement . . . concerning the alleged crime made by [Martinez] which is in the possession, custody or control of the State." Haller followed up on the motion by way of several telephone calls over the spring and summer.

By the time he received notice on August 30 that Assistant District Attorney John Daniels would be trying the case for the state, Attorney Haller still had not

---

[1] The discovery demand was dated April 6, 1990 and filed April 19, 1990. The record does not indicate when the demand was served upon the district attorney's office. The state does not contend that it did not have notice of the discovery demand.

gained access to the tape or a copy of the tape. He telephoned Daniels on August 31 to again ask that the tape be produced. Daniels told Haller that a copy of the tape would be waiting for him at the sheriff's department later that day. But when Haller stopped by the sheriff's department that evening, the tape was nowhere to be found. Haller checked again the following day, and again after the close of the Labor Day holiday. Still the tape could not be found.

Haller filed a motion *in limine* with the circuit court seeking, among other things, an order suppressing for use at trial "[a]ny evidence of the contents of conversations in which [Martinez] was a participant and which were taped or recorded by officers or agents of the State, and specifically including the conversation of October 18, 1989 . . .." Haller patterned the motion on sec. 971.23(1), Stats., which enables a criminal defendant to demand access to his or her statements concerning the crime, and on subsec. (7), which prescribes sanctions for the state's failure to comply with such discovery demand. Haller's affidavit in support of the motion *in limine* recited the history of his unsuccessful attempts to obtain the tape.

At the hearing on the motion, the trial court heard a statement from Assistant District Attorney Daniels concerning how the tape was lost. Although the court and the attorneys engaged in substantial discussion regarding the matter, the extent of the state's explanation for the loss was the following:

> I agree with Marshall Haller. We did—We goofed up.
> A tape was lost of apparently a portion of the facts,
> that Mr. Haller did mention it was about two weeks
> ago that he apparently made the request to the dis-
> trict attorney to hear the tape. That relay was sent
> down to the county jail at which time they took the

254

tape, brought it to the front desk for Mr. Haller to come pick up. We never told Mr. Haller to come pick it up, and at that point it's disappeared. And from that point on, Your Honor, we have not been able to find it . . ..

The state further indicated that suppression of the officers' testimony might be appropriate, but that suppression should not extend beyond such evidence—particularly as to the testimony of Frea. Martinez contended, however, that suppression should extend to all witnesses who participated in the controlled buy.

After hearing the arguments of counsel, the trial court, following up on the state's suggestion, initially declared that the only statements by Martinez which the state would be allowed to introduce at trial were those heard by Frea reflecting Martinez' concern that Frea was a "snitch" and had photocopied the money.[2] The court then ordered a brief recess to allow the state to interview its witnesses concerning what other statements Martinez may have made on the tape and to provide Martinez with a summary of those statements. The court stressed, however, that these summaries could not be used at trial.

Apparently some conversations then occurred between the trial court and counsel during the recess. When the proceeding resumed, the court stated that the prosecutor had discovered a possibility that the police had made a tape of Martinez on another occasion. The court stated that the contents of this other statement might support Martinez' argument that the statements attributed to her on October 18 had in fact been made at another time and were not, taken in context, inculpatory. The court further declared that while it could not conclude that the state had acted in bad faith concerning

[2]The state had previously disclosed these statements to Martinez.

compliance with Martinez' discovery demand, the state had nevertheless failed to establish that it had acted in good faith vis-a-vis Martinez' discovery demand. However, finding dismissal of the charge "too severe a sanction at this point," the trial court adjourned the proceedings so that the state might look for the "new" tape.

Neither the "old" tape nor the "new" tape was ever found. The trial took place on December 19, 1990. Before the jury was selected, the court and the parties again addressed this issue. Martinez continued to press for the exclusion of all evidence concerning the contents of the taped conversation with Frea. As before, Martinez argued that based upon sec. 971.23, Stats., and our decision in *State v. Wild,* 146 Wis. 2d 18, 429 N.W.2d 105 (Ct. App. 1988), the state's failure to produce the tape made exclusion mandatory. The state, also citing *Wild,* contended that the continuance already granted by the trial court was the proper remedy over exclusion.

The trial court denied Martinez' motion to suppress. The court reasoned that the state's explanation demonstrated "nothing other than just simple negligence." The court also concluded that the negligence of the police authorities could not be visited upon the state as the prosecuting entity. Thus, the court ruled that the officers could testify as to their recollections of what they heard as they monitored the transaction from their surveillance vehicle. The court also ruled that Martinez could introduce evidence concerning how the tape was lost. Martinez was convicted as charged.

## ANALYSIS

The issue on appeal concerns the proper application of sec. 971.23, Stats. The statute states in relevant part:

**(1) Defendant's statements.** Upon demand, the district attorney shall permit the defendant within a reasonable time before trial to inspect and copy or photograph any written or recorded statement concerning the alleged crime made by the defendant which is within the possession, custody or control of the state . . .. Upon demand, the district attorney shall furnish the defendant with a written summary of all oral statements of the defendant which he [or she] plans to use in the course of the trial . . ..

. . ..

**(7) Continuing duty to disclose; failure to comply . . ..** The court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance.

Section 971.23(7), Stats., requires the trial court to exclude evidence which is not produced pursuant to a discovery demand unless "good cause is shown for failure to comply." This burden clearly rests with the state. Whether a party has satisfied its burden is a question of law which we review without giving deference to the trial court's conclusion. *Becker v. State Farm Mut. Auto. Ins. Co.,* 141 Wis. 2d 804, 811, 416 N.W.2d 906, 909 (Ct. App. 1987).

Martinez asked for her tape recorded statement pursuant to subsec. (1) of this statute. The state reported to the trial court that it had "goofed" and lost the tape. The only facts the state provided as to why or how it had lost the tape was the assistant district attorney's statement: the state had relayed defense counsel's request for the

257

tape to the county jail; the tape had been delivered to the front desk; and thereafter the tape disappeared.

Reduced to its simplest terms, the state's explanation for its failure to comply with Martinez' discovery demand was that the evidence was "lost." This explanation, however, begged the question before the court. No one disputed that the tape was lost. Rather, the question before the court was "why" or "how." The state's minimal explanation did not meaningfully address this crucial question.[3] Instead, the state offered the trial court a few skeletal facts showing that the tape was lost. But the state offered nothing of substance as to how the tape was actually inventoried, processed, stored or subsequently handled.

The trial court concluded that the state's actions were "simply negligence" and not done in bad faith.[4] We disagree that the facts permitted this conclusion. Instead, the limited facts offered by the state allowed for a host of speculative (not reasonable) inferences as to the state's conduct—good faith, negligence, recklessness, intentional conduct, or bad faith. This points to the fundamental problem—the failure of the state to meet its burden under the statute.

---

[3]The other facts which we have recited in this opinion regarding the authorities' processing and handling of the tape come from the trial record. This information was not before the trial court when it made its ruling, and the court did not revisit this issue when this added information came to light. We confine ourselves to the minimal record before the court when it made its ruling.

[4]The trial court never expressly spoke in terms of the statutory phrase, "good cause." We equate the court's "negligence/no bad faith" determination as the equivalent of a "good cause" determination under the statute.

258

Nor are we prepared to say that negligence or lack of bad faith constitutes "good cause" as a matter of law for all cases under sec. 971.23(7), Stats., as the trial court's decision might suggest. While an assessment of the state's conduct in such terms may be relevant to the question of "good cause," it is not necessarily controlling. Ultimately, the question of whether the state has met its burden to establish "good cause" must depend on the specific facts of the case. Even if the facts could be read to support the trial court's "negligence/no bad faith" conclusion, this still begs the question of "good cause" under the statute.

■■■■

We appreciate that the imposition of a sanction for a discovery violation is addressed to the discretion of the trial court. *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 643, 360 N.W.2d 554, 560 (Ct. App. 1984). However, the question here was not one of sanction for a discovery violation, but rather whether there was good cause for the discovery violation.[5] The facts on this question are undisputed. The application of a statute to undisputed facts presents a question of law which we independently review. *Kaelber Plumbing & Heating v. LIRC,* 160 Wis. 2d 342, 347, 465 N.W.2d 829, 831 (Ct. App. 1991). And, as we have already concluded, the state's meager explanation on this question failed to establish good cause for the discovery violation.[6]

---

[5]For this reason, *State v. Wild,* 146 Wis. 2d 18, 429 N.W.2d 105 (Ct. App. 1988), is inapplicable. The issue in *Wild* was the appropriate sanction for an assumed discovery violation. *Id.* at 26, 429 N.W.2d at 108. The issue here is whether the state established good cause for its failure to comply with a discovery demand.

[6]The state argues that we should adopt the analysis set out in *United States v. Miranda,* 526 F.2d 1319 (2d Cir. 1975), *cert.*

We also reject the trial court's reasoning that the actions of the police authorities in losing the tape should not be visited upon the state as the prosecuting entity. For purposes of the criminal discovery statutes, we view an investigative police agency which holds relevant evidence as an arm of the prosecution. In most criminal cases, the evidence against the accused is garnered, stored and controlled by the investigating police agency. Depending upon local practice, many courts and district attorneys entrust the custody and control of such material to the police even after it has been elevated to formal evidentiary status in a criminal proceeding.

The trial court's reasoning would apparently sanction the loss of relevant evidence only if committed by the district attorney's office, but not by the principal investigative agency.[7] This distinction is neither reasonable nor valid.

---

*denied,* 429 U.S. 821 (1976). This approach measures the degree of the government's culpability in the discovery violation against the amount of prejudice to the defense. *Id.* at 1324–25. The *Miranda* court offered this test, in part, under Rule 16 of the Federal Rules of Criminal Procedure, the federal criminal discovery statute. That Rule, however, does not burden the government with establishing good cause as to why it failed to comply with a discovery demand. Section 971.23(7), Stats., however, does carry such a requirement. We conclude that our statute does not permit application of the *Miranda* test.

[7]Even if we were to adopt the trial court's distinction between a police agency which controls the evidence and the state as the prosecuting entity, the state is not without fault here. When explaining the loss of the tape, Assistant District Attorney Daniels admitted that the state had failed to advise defense counsel that the tape was awaiting him at the "front desk."

## CONCLUSION

We reverse the judgment of conviction and remand for further proceedings. If either party or the court wishes to revisit the question of "good cause" under sec. 971.23(7), Stats., we authorize a further hearing on this question.[8] If, after such hearing, the court concludes that good cause has been established, the court is authorized to reinstate Martinez' conviction. If, after such hearing, the court concludes that good cause has not been established, the court shall accord Martinez a new trial and the officers' testimony at dispute in this case shall be precluded.

If the parties or the court do not conduct a further hearing on the question of good cause, we order a new trial and, again the officers' disputed testimony shall be precluded.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[8]We do not mandate such a hearing. If the state has no further explanation than that already offered, our conclusion herein that such is insufficient to constitute "good cause" under the statute stands as the law of the case.