STATE of Wisconsin, Plaintiff-Respondent,†

v.

Media DeLAO, Defendant-Appellant.

Court of Appeals

*No. 00–1638–CR. Submitted on briefs March 21, 2001.—Decided May 2, 2001.*

## 2001 WI App 132

(Also reported in 629 N.W.2d 825.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J.   Media DeLao appeals from a judgment of conviction for obstructing a police officer, possession of a short-barreled shotgun and harbor-

ing/aiding a felon, and from an order denying her motion for postconviction relief. DeLao makes three arguments in favor of her appeal: (1) the State should not have been allowed to amend the information after the close of evidence; (2) the State violated discovery rules by failing to provide DeLao with her previous statements and should not have been allowed to impeach her with said statements; and (3) the jury should not have been allowed to discontinue deliberations, return home for the evening and return the next day without going on the record. We agree that DeLao's statements should not have been used to impeach her trial testimony, and we reverse the judgment and the order on that basis.

## FACTS

¶ 2.    On June 9, 1999, a criminal complaint was filed charging DeLao with five crimes: obstructing an officer, contrary to WIS. STAT. § 946.41(1) (1999–2000);[1] harboring/aiding a felon, contrary to WIS. STAT. § 946.47(1)(b); two counts of possession of a short-barreled shotgun, contrary to WIS. STAT. § 941.28(2); and possession of drug paraphernalia, contrary to WIS. STAT. § 961.573(1). These charges arose from an incident at DeLao's house on June 7, 1999. While at DeLao's house, Desmond Stalsberg, DeLao's boyfriend, got into a fight with another man, John Sabala, during which Stalsberg shot Sabala in the face.

¶ 3.    The charges against DeLao were the result of her behavior after the shooting. The complaint alleged that DeLao lied to the police about her presence during the shooting, misled the police about Stalsberg's

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

whereabouts, disposed of shotgun cartridges and cleaned up blood at the crime scene. In addition, during a search of her home, police found two short-barreled weapons and a crack pipe.

¶ 4. On June 14, 1999, after a preliminary hearing, DeLao was bound over for trial on each of the felony charges. That same day, the State filed an information containing charges identical to those in the complaint.

¶ 5. Pretrial, DeLao filed a discovery demand, specifically demanding that the State provide her with written summaries of any "oral, written or recorded statements" she made, pursuant to WIS. STAT. § 971.23(1)(b).

¶ 6. A jury trial commenced on Tuesday, July 27, 1999. During opening statements, DeLao's attorney announced that DeLao would take the stand and testify on her own behalf. On the second day of trial, after the State had rested, Assistant District Attorney Sharon Riek advised the trial court that she had in her possession statements made by DeLao, previously undisclosed to the defense; Riek intended to use these statements to impeach DeLao if she testified. Riek stated that the State's primary investigator in this shooting incident, Douglas Chaussee of the Mount Pleasant Police Department, had just that day made her aware of these statements. After Chaussee testified and the State rested its case, Chaussee informed Riek about statements DeLao had made to Detective James Prioletta of the City of Racine Police Department. At Chaussee's recommendation, Prioletta interviewed DeLao on June 29, 1999, about an unrelated crime involving Stalsberg, after DeLao had been arrested and was in jail; Prioletta then told Chaussee about DeLao's statements. Chaussee testified that he

learned about the statements prior to trial but did not share this information with Riek until after he had testified and the State had presented its case.

¶ 7.  DeLao objected to the use of these statements, arguing that the State was in violation of discovery rules. Despite these objections, the trial court ruled that if DeLao testified, the State could use the statements for impeachment purposes. DeLao testified on her own behalf, after which the defense rested; Prioletta was then called as a witness to impeach DeLao's testimony.

¶ 8.  After the close of evidence, during the final jury instruction conference, the State asked to file an amended information, adding a charge of harboring/aiding a felon, contrary to WIS. STAT. § 946.47(1)(a), in addition to the original harboring charge based upon § 946.47(1)(b). Despite DeLao's objections, the trial court allowed the State to amend the information.

¶ 9.  In the morning on the third day of trial, Thursday, July 29, 1999, the attorneys gave their closing arguments, the trial court instructed the jury, and the jury began its deliberations. The next entry in the record is the jury's verdict on Friday July 30, 1999. The minutes sheet for July 29, 1999, contains a notation that the jury was excused from deliberations and allowed to return home at 4:50 p.m. that day. However, this break in deliberations was not memorialized in the record. In addition, there is no record of the jury's return to deliberations on Friday morning, July 30, 1999. The transcript begins with the taking of the verdicts, which appears to have happened at 10:45 a.m.

¶ 10.  The record further indicates, by virtue of the verdict forms, that the jury reached verdicts on four of the six counts during the first day of deliberations. On July 29, 1999, the first day of jury deliberations,

DeLao was found guilty of obstructing and possession of a short-barreled shotgun; she was found not guilty of the original count of harboring/aiding a felon and not guilty of the other count of possession of a short-barreled shotgun. On July 30, 1999, the second day of jury deliberations, DeLao was found guilty of the amended harboring/aiding a felon charge and not guilty of possession of drug paraphernalia.

¶ 11.  DeLao was sentenced to one year and one day in prison on the harboring/aiding a felon charge; the trial court also imposed and stayed maximum sentences on the obstructing and short-barreled shotgun charge and placed DeLao on three years' consecutive probation.

¶ 12.  DeLao filed a motion for postconviction relief, which was heard and denied. She appeals her conviction and the denial of her postconviction motion.

## DISCUSSION

¶ 13.  DeLao argues that the trial court erred in three respects: (1) in allowing the State to amend the information after the close of evidence during the final jury instruction conference; (2) in allowing the State to impeach DeLao with statements that were not disclosed to the defense during discovery; and (3) in allowing the jury to stop deliberations, go home for the evening and resume deliberations the next morning without ever going on the record. Because we agree with DeLao that the trial court erred in allowing the State to impeach her with statements previously undisclosed to the defense, we need not address her remaining arguments.

¶ 14.  This appeal concerns the proper application of discovery statute WIS. STAT. § 971.23. The State argues that no § 971.23 discovery violation occurred

here. In the alternative, the State argues, if there was a discovery violation, there was good cause for the violation. We disagree with both of these assertions.

¶ 15.  On June 30, 1999, DeLao filed a discovery demand asking the State to:

> 1.  Furnish the defendant a copy of any and all oral and written or recorded statements made by the defendant concerning the alleged crime, which are within the possession, custody or control of the state
>
> . . . .
>
> 2.  Furnish the defendant with a written summary of any oral, written or recorded statements of the defendant, but not limited to those statements which the state intends to use in the course of the trial, along with the names and addresses of all witnesses to the oral, written or recorded statements. . . .
>
> . . . .
>
> 19.  Any and all evidence or materials not specifically or generally set forth herein which may reasonably be said to be in any way germane to or connected with the above entitled action within the letter and spirit of the laws pertaining to disclosure and discovery.

WISCONSIN STAT. § 971.23 addresses discovery and states, in relevant part:

> (1)  WHAT A DISTRICT ATTORNEY MUST DISCLOSE TO A DEFENDANT. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:

(a) Any written or recorded statement concerning the alleged crime made by the defendant, including the testimony of the defendant in a secret proceeding under s. 968.26 or before a grand jury, and the names of witnesses to the defendant's written statements.

(b) A written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial and the names of witnesses to the defendant's oral statements.

. . . .

(7) CONTINUING DUTY TO DISCLOSE. If, subsequent to compliance with a requirement of this section, and prior to or during trial, a party discovers additional material or the names of additional witnesses requested which are subject to discovery, inspection or production under this section, the party shall promptly notify the other party of the existence of the additional material or names.

¶ 16. The State argues that because the district attorney was unaware of these statements, the statements were not ones that the district attorney planned to use in the course of trial and thus were not discoverable under WIS. STAT. § 971.23(1)(b). We decline to adopt the State's narrow characterization of § 971.23 in this instance.

¶ 17. DeLao requested, pursuant to WIS. STAT. § 971.23(1)(b), "a written summary of any oral, written or recorded statements of the defendant, *but not limited to* those statements which the state intends to use in the course of the trial." (Emphasis added.) Thus, DeLao asked for all statements, not just the ones the State intended to use at trial. The statements in question fell within the purview of her discovery demand. The State made no objection to DeLao's discovery

demand as overbroad or beyond the scope of § 971.23(1)(b).

¶ 18.  Wisconsin courts have held that the prosecutorial unit, which includes both the district attorney's and law enforcement offices, must be viewed as one unit for the purposes of the discovery process. *Jones v. State,* 69 Wis. 2d 337, 348–49, 230 N.W.2d 677 (1975). A prosecutor may not avoid the pursuit of any evidence, and, in fact, it is the prosecutor's duty to acquire all relevant evidence. *Id.* "The test of whether evidence should be disclosed is not whether in fact the prosecutor knows of its existence but, rather, whether by the exercise of due diligence he [or she] should have discovered it." *Id.* at 349 (citation omitted).

¶ 19.  The prosecution is obligated "to obtain *all* evidence in the possession of investigative agencies of the state." *Id.* (citation omitted). This obligation extends to material and information in the possession or control of members of the prosecution's staff and in the possession "of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported" to his or her office. *Id.* (citation omitted).

¶ 20.  This prosecution obligation was confirmed in *State v. Martinez,* 166 Wis. 2d 250, 260, 479 N.W.2d 224 (Ct. App. 1991), where we held that for the purposes of the criminal discovery statutes, we view an investigative agency which holds relevant evidence as an arm of the prosecution. In many criminal cases, the evidence is collected, contained and controlled by the investigating police agency. *Id.* Both the courts and

district attorneys' offices entrust the custody and control of such evidence to the police. *Id.*

¶ 21.  Here, the statements in question were made on June 29, 1999, prior to trial, to Prioletta of the Racine police department. Prioletta interviewed DeLao at the recommendation of Chaussee. Chaussee's name was mentioned extensively throughout Prioletta's report. As the district attorney stated when asking that Chaussee be exempted from the witness sequestration order, Chaussee was "the central investigator that ties all of the ends together." Chaussee knew of Prioletta's visit to DeLao in jail and was aware of DeLao's statements prior to trial.

■

¶ 22.  The trial court's reasoning, that no discovery violation occurred because the district attorney was unaware of the statements, would exclude the statements in question only if the district attorney's office withheld them, but not the primary investigative agency. As we stated in *Martinez*, "[t]his distinction is neither reasonable nor valid." *Id.* Riek and Chaussee together constitute the State in this matter. Thus, a discovery violation occurred when the State failed to provide DeLao with the statements in question.

■

¶ 23.  WISCONSIN STAT. § 971.23(7m) requires the trial court to exclude evidence that is not produced pursuant to a discovery demand unless "good cause is shown for failure to comply." This burden clearly rests with the State. *Martinez*, 166 Wis. 2d at 257. Whether a party has satisfied its burden is a question of law which we review without giving deference to the trial court's conclusion. *Id.*

¶ 24.  WISCONSIN STAT. § 971.23(7) requires two separate determinations by the trial court. *State v. Wild*, 146 Wis. 2d 18, 27, 429 N.W.2d 105 (Ct. App. 1988). First, the court must determine whether the noncomplying party (here, the State) has shown good cause for the failure to comply. *Id.* If good cause is not shown, the statute is mandatory—the evidence shall be excluded. *Id.*

¶ 25.  One of the State's primary arguments that good cause exists for the discovery violation is that DeLao's statements were made during an investigation of Stalsberg, not DeLao. We disagree with this characterization of the facts. The events involving Stalsberg and DeLao were hopelessly intertwined. DeLao was not a mere citizen witness. She was a suspect. While the interview may have principally targeted Stalsberg, DeLao gave statements against her interest, insofar as the charges against her were concerned.

¶ 26.  The State also argues that it acted in good faith because Chaussee told Riek about DeLao's statements as soon as he realized they might be relevant to the case, and Riek provided DeLao and the court with the statements as soon as she became aware of their existence. The State misunderstands the standard of WIS. STAT. § 971.23(7m); the State's good faith does not amount to good cause. As we stated in *Martinez*, negligence, or even lack of bad faith, does not constitute good cause as a matter of law. *Martinez*, 166 Wis. 2d at 259.

¶ 27.  Chaussee knew of DeLao's statements prior to trial, yet failed to inform the district attorney because he did not think the statements were relevant. It is not Chaussee's job to determine the relevancy of

evidence. Again, we view Chaussee and Riek as one prosecutorial unit, imputing the knowledge of one to the other. The State offers no acceptable justification for the withholding of the statements other than it acted in good faith. This alone is insufficient to meet its burden of demonstrating good cause under WIS. STAT. § 971.23(7m).

¶ 28. DeLao was caught on the horns of a dilemma, placed in that position by the State—either she must testify and accept the consequences of impeachment, or break her promise to the jury that she would testify and accept the consequences of her broken promise. No judicial remedy, including additional time to inspect the statements and permission to voir dire Prioletta, could eradicate this dilemma. No good cause existed for the State's withholding of the evidence and the only appropriate remedy was its exclusion.

## CONCLUSION

¶ 29. The State violated discovery rules by failing to provide DeLao with the statements she made to Prioletta. The violation was not justified by good cause. The proper remedy was the exclusion of the statements and the trial court erred in allowing the State to use these statements for impeachment purposes. The judgment of conviction and the order are reversed and this matter is remanded for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.