COURT OF APPEALS
DECISION
DATED AND FILED

January 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP752-CR**

Cir. Ct. No. **2018CF700**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JESUS GARZA-HIPOLITO,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: KENT R. HOFFMANN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jesus Garza-Hipolito appeals from a judgment of conviction for third-degree sexual assault as a repeater. He also appeals from an order denying his postconviction motion. Garza-Hipolito argues certain DNA evidence should have been excluded at his bench trial based on the State's alleged violation of the applicable discovery statute. He also argues his trial attorney was constitutionally ineffective by failing to seek recusal of the presiding judge at the bench trial when that judge had conducted a pretrial review of an interrogation recording for the purpose of determining the recording's admissibility. We reject Garza-Hipolito's arguments and affirm.

## BACKGROUND

¶2 Garza-Hipolito was prosecuted for third-degree sexual assault as a repeater based on the victim's allegation that he had caressed her, kissed her neck, and inserted his fingers into her vagina without her consent while present at her home. The case was originally scheduled for trial in October 2019, but the State requested an adjournment for additional DNA testing. A database inquiry had revealed that DNA swabbed from the victim's neck possibly matched an indexed DNA profile belonging to Garza-Hipolito.[1] The State, acknowledging the testing "should have been done a long time ago," needed more time to compare the swabbed DNA with a new sample taken from Garza-Hipolito.

¶3 The circuit court granted the adjournment and issued a search warrant for the DNA. The state crime laboratory, however, did not issue a report

---

[1] It is undisputed that the State learned on April 29, 2019, that the swabbed DNA was linked to Garza-Hipolito's DNA profile in the CODIS database. In July 2019, the State filed a notice of intent to use DNA evidence.

containing any findings from the DNA analysis until June 25, 2020.[2] The report concluded it was at least "one quadrillion times more likely" that the DNA mixture swabbed from the victim's neck included Garza-Hipolito's DNA than DNA from an unknown person.

¶4 At the time of that revelation, Garza-Hipolito's trial was set to commence on July 23, 2020. His defense counsel sought to exclude the DNA analysis, asserting the State had failed to timely comply with its discovery obligations under WIS. STAT. § 971.23. At a hearing on the motion, the circuit court questioned the State about the delay in testing, to which the prosecutor offered only a general answer about the state crime laboratory's volume and how it prioritized matters for processing.

¶5 The circuit court expressed frustration at the length of the delay and the lack of a clear explanation for why the testing was only done in late June. Still, the court determined that excluding the DNA analysis was too severe a sanction considering the nature of the charge and the rights of the victim. However, out of fairness to the defense, the court adjourned the trial date to give the defense adequate time to prepare to address the new DNA evidence.

¶6 Meanwhile, Garza-Hipolito had informed his attorney that he wished to have a bench trial, and the parties were litigating the admissibility of a video-recorded police interrogation of Garza-Hipolito. The circuit court

---

[2] Garza-Hipolito asserts the State did not submit his DNA to the state crime laboratory until April 24, 2020. His brief fails to include a citation to the appellate record for that proposition, in apparent violation of the Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.19(1)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

3

considered these issues at a May 11, 2020 hearing. Citing what was, at that time, the "tight time frame" before trial, defense counsel requested that the court review the recording prior to the next motion date. The court agreed to do so and deferred action on Garza-Hipolito's anticipated jury waiver.

¶7    The circuit court reviewed the two-hour recording. At the next motion hearing, the prosecutor expressed uncertainty about which portions of the recording would be presented to the jury. The court responded that it had concerns about numerous portions of the recording that contained information the jury should not hear. It deferred an admissibility ruling to allow the parties more time to negotiate.

¶8    The circuit court took up both the recording's admissibility and the jury waiver at the next hearing on June 1, 2020. The court accepted Garza-Hipolito's jury waiver following a personal colloquy. As for the recording, the State informed the court it would rely on the testimony of the interrogating officer at trial and would not seek the recordings' admission into evidence.

¶9    At the time of the jury waiver, defense counsel was aware of the potential issue concerning the trial judge's viewing of the complete interrogation recording. Defense counsel stated on the record that he had "fully and completely" taken those concerns into account and did "not desire a different judge" to hear the case. Counsel remarked that there was "no issue" from a defense perspective, and the circuit court agreed that it could disregard the contents of the recordings and hear the case fairly and impartially based upon the evidence presented at trial.

¶10    The circuit court ultimately held a bench trial over two days in December 2020. The victim testified, as did Garza-Hipolito, and evidence of the

comparative DNA analysis was admitted. The court found the victim credible and found Garza-Hipolito guilty of the sexual assault.

¶11 After sentencing, Garza-Hipolito filed a postconviction motion seeking a new trial. As relevant here, he argued that the DNA analysis should have been excluded based upon the prosecution's violation of the criminal discovery statute, WIS. STAT. § 971.23. Garza-Hipolito also argued his trial attorney was constitutionally deficient for not seeking the judge's recusal based upon the circuit court's pretrial viewing of the interrogation recording.

¶12 Following a *Machner* hearing,[3] the circuit court denied the postconviction motion. Regarding the DNA evidence, the court emphasized the truth-seeking nature of trial and concluded it had acted properly when it refused to exclude the evidence but allowed the defense additional time to prepare. Regarding recusal, the court stated that viewing the recording did not influence the trial outcome and there was no subjective or objective bias that would have warranted a recusal motion. Accordingly, it determined that Garza-Hipolito's trial attorney was not constitutionally ineffective in that regard. Garza-Hipolito now appeals.

## DISCUSSION

¶13 Garza-Hipolito raises two arguments on appeal. First, he contends the circuit court should have excluded the comparative DNA analysis at trial based on the State's untimely disclosure of that evidence, rather than adjourning the trial to permit time for additional defense preparation. Second, Garza-Hipolito asserts

---

[3] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

it was both constitutionally ineffective assistance and structural error for his attorney not to object to the trial judge's participation in his bench trial after the judge had viewed the interrogation video. We reject both arguments.

> I. *Garza-Hipolito has failed to establish that a* WIS. STAT. *§ 971.23 discovery violation necessitated the exclusion of the late-arriving DNA comparison report.*

¶14 Garza-Hipolito argues the circuit court erred by denying his motion to exclude the DNA analysis report as untimely under WIS. STAT. § 971.23. That section governs discovery in criminal cases and includes provisions governing the disclosure of scientific testing, *see* § 971.23(1)(e), and DNA evidence, *see* § 971.23(9). A violation of the discovery statute requires the exclusion of the undisclosed evidence, unless good cause is shown for the failure to comply. Sec. 971.23(7m)(a).

¶15 We review de novo the questions of whether there has been a violation of WIS. STAT. § 971.23 and whether there was good cause for the failure to comply. *State v. Harris*, 2008 WI 15, ¶15, 307 Wis. 2d 555, 745 N.W.2d 397. However, we review the sanction imposed for a discovery violation for an erroneous exercise of discretion. *State v. Martinez*, 166 Wis. 2d 250, 259, 479 N.W.2d 224 (Ct. App. 1991).

¶16 Garza-Hipolito acknowledges that the first step in the WIS. STAT. § 971.23 analysis is to determine if the State violated the discovery statute. *See State v. DeLao*, 2002 WI 49, ¶14, 252 Wis. 2d 289, 643 N.W.2d 480. Despite this acknowledgment, his appellate brief offers scant analysis on this point. Rather, Garza-Hipolito appears to assume the State was required to satisfy the "good cause" standard—a determination that is necessary only if a violation has occurred.

¶17    This failure in briefing is all the more apparent given the State's attention to the specific issue of whether the prosecutor violated WIS. STAT. § 971.23.  The State explicitly argues that no § 971.23 violation occurred because the state crime laboratory provided the report to the prosecutor as soon as it was completed by the analyst, and the prosecutor then promptly turned the report over to defense counsel.

¶18    Garza-Hipolito's reply brief skirts past the State's argument.  He recites some of the case's procedural facts and then posits that the State failed to establish good cause because the prosecutor failed to adequately explain the delay.  Garza-Hipolito then suggests it was the prosecutor's responsibility under WIS. STAT. § 971.23 to promptly shepherd through the crime laboratory's DNA testing, such that the failure to do so warrants exclusion of the evidence.

¶19    The case law Garza-Hipolito relies on does not establish, under WIS. STAT. § 971.23, a duty on the part of a prosecutor to promptly compel other state agencies to perform their investigative functions.  Rather, ***Wold v. State***, 57 Wis. 2d 344, 204 N.W.2d 482 (1973) and ***DeLao*** impute knowledge to the prosecutor of any discoverable evidence within the possession of law enforcement agencies.  That principle has no application when the evidence—like the DNA analysis report here—does not yet exist.[4]

---

[4] Garza-Hipolito's brief-in-chief relies on ***State v. Wild***, 146 Wis. 2d 18, 429 N.W.2d 105 (Ct. App. 1988), which has been overruled by our supreme court on other grounds.  *See **State v. Eichman***, 155 Wis. 2d 552, 563, 456 N.W.2d 143 (1990).  A court of appeals decision overruled by our supreme court no longer retains any precedential value, even on issues not specifically overruled, unless the supreme court explicitly states otherwise.  ***Blum v. 1st Auto & Cas. Ins. Co.***, 2010 WI 78, ¶46, 326 Wis. 2d 729, 786 N.W.2d 78.  ***Eichman*** contained no such limitation on the reach of its overruling.

¶20    In sum, we are not persuaded that a WIS. STAT. § 971.23 violation occurred in the first instance.   As a result, Garza-Hipolito has failed to demonstrate that there was a basis for the circuit court to exclude the comparative DNA analysis, as opposed to granting the adjournment to allow the defense time to prepare.

> II.    *Garza-Hipolito's counsel was not constitutionally ineffective, nor was there structural error, by virtue of his failure to seek recusal of the presiding judge based upon the judge's prior viewing of an interrogation video recording that was not introduced into evidence at the bench trial.*

¶21    Garza-Hipolito next argues that the presiding judge should have recused himself from the case because he had reviewed the interrogation recording during the pretrial proceedings regarding its admissibility.  Garza-Hipolito frames this argument in two ways: first, as an ineffective assistance of counsel claim because his trial attorney consented to the judge's continuing on as the presiding judge; and second, as an instance of structural error.  We reject both arguments.

¶22    We begin with Garza-Hipolito's ineffective assistance of counsel argument.  "The Sixth Amendment guarantees a defendant the effective assistance of counsel." ***State v. Savage***, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted).  We review an ineffective assistance of counsel claim using a mixed standard of review. ***Id.***, ¶25.  The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. ***Id.***

¶23    To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient

performance prejudiced the defendant. *Id.*; *see also* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶24 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶25 Garza-Hipolito argues his attorney was constitutionally deficient for consenting to the trial judge continuing to preside over his case after reviewing the interrogation recording. The circuit court found that Garza-Hipolito's trial counsel testified credibly during the postconviction proceedings that Garza-Hipolito was concerned about the possibility of ethnic prejudice from a jury and it was his affirmative decision to request a bench trial. Additionally, Garza-Hipolito was insistent that he wanted to testify at trial, and defense counsel thought some of the accusations he wanted to make about the victim might have produced "backlash" from a jury. Based on Garza-Hipolito's statements, his defense attorney did not believe the judge's viewing of the interrogation recording would have any bearing on the decision to request a bench trial.

¶26 Defense counsel further testified that even though he did not want the full recording introduced into evidence at a jury trial, he did not have similar concerns about the trial judge's pretrial viewing of the recording for the purpose of

determining admissibility. He was certain he advised Garza-Hipolito that "whatever can be said of a 12-person citizen jury, talking about a circuit court judge you can depend upon them to strictly obey the law and to follow … rules of evidence …." Moreover, counsel testified that judges generally are presumed "ready, willing, and able to compartmentalize any information as appropriate in the course of a proceeding."

¶27 Defense counsel was specifically asked during the postconviction proceedings about the nature of the presumption of impartiality. Counsel had referred to the presumption as "irrebuttable" at the time he decided not to challenge the trial judge's ability to preside over Garza-Hipolito's case. Postconviction, he explained that he regarded it as an irrebuttable presumption in Garza-Hipolito's case because he had no indication or evidence that the presiding judge would have difficulty disregarding potentially prejudicial information in the recording and therefore any attempt to rebut the presumption would have failed.

¶28 Based on the foregoing, we agree with the circuit court that Garza-Hipolito's defense counsel did not perform deficiently by failing to seek the presiding judge's recusal. We presume a judge has acted fairly, impartially, and without prejudice. *State v. Herrmann*, 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772. A defendant may rebut that presumption by showing that the appearance of bias reveals a great risk of actual bias. *Id.* (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 885 (2009); *State v. Goodson*, 2009 WI App 107, ¶14, 320 Wis. 2d 166, 771 N.W.2d 385; *State v. Gudgeon*, 2006 WI App 143, ¶23, 295 Wis. 2d 189, 720 N.W.2d 114). As Garza-Hipolito's trial counsel recognized, the facts here do not meet that standard.

¶29    To demonstrate a risk of bias, Garza-Hipolito essentially relies on the circuit court's pretrial review of the recording and the fact that the same judge had previously sentenced Garza-Hipolito for a bail-jumping violation. Neither of these matters, standing alone or in tandem, is sufficient to constitute a due process violation. As defense counsel recognized, judges (and juries, for that matter) are routinely asked to disregard potentially prejudicial information. Judges also routinely preside over matters involving individuals with whom the judge has prior case experience. There is nothing particularly noteworthy about the court's pretrial recording review or Garza-Hipolito's previous case; certainly nothing that would suggest to an observer that a reasonable judge under the circumstances would not be able to "hold the balance nice, clear and true." *Caperton*, 556 U.S. at 885 (citation omitted).

¶30    Garza-Hipolito also suggests the circuit court demonstrated an inability to disregard the recorded interrogation based on certain comments the court made during the factfinding process following trial. But there was extensive testimony admitted at trial about Garza-Hipolito's changing story and the statements he made during the interrogation. It was not improper for the court to discuss that evidence and comment upon it when making findings about Garza-Hipolito's guilt.[5] Doing so does not reflect the court's inability to disregard the purportedly inadmissible portions of the recording.

¶31    Under the circumstances, Garza-Hipolito's trial counsel was not constitutionally deficient for consenting to the trial judge's continued participation

---

[5] Moreover, we agree with the State's thorough point-by-point refutation of the circuit court's allegedly offending statements when performing its factfinding function.

11

in the case. We therefore have no need to consider prejudice. And although Garza-Hipolito attempts to make a cursory argument regarding structural error, his argument presupposes that he was tried by a biased judge—something that he has failed to demonstrate. *See State v. C.L.K.*, 2019 WI 14, ¶15, 385 Wis. 2d 418, 922 N.W.2d 807 (describing structural errors).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.