STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald SCHAEFER, Defendant-Appellant.

Supreme Court

*No. 2006AP1826–CRAC. Oral argument September 5, 2007.
—Decided April 2, 2008.*

2008 WI 25

(Also reported in 746 N.W.2d 457.)

284

For the defendant-appellant there were briefs by *Kathleen B. Stilling, Jerome F. Buting,* and *Buting & Williams, S.C.,* Brookfield and oral argument by *Kathleen B. Stilling.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general with whom on the briefs was *J.B. Van Hollen,* attorney general.

An amicus curiae brief was filed by *Nicholas Chiarkas,* state public defender, and *Marla J. Stephens,* director, appellate division, *Office of the State Public Defender,* Milwaukee; and *Keith A. Findley, John A. Pray,* and *Byron Lichstein, University of Wisconsin Law School Frank J. Remington Center,* Madison; on behalf of the *Wisconsin Innocence Project,* Madison.

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2005–06).[1] It relates to an appeal from a nonfinal order of the Waukesha County Circuit Court, Ralph M. Ramirez, Judge. Judge Ramirez granted the State's (State) motion to quash a subpoena duces tecum from defendant Ronald Schaefer (Schaefer) that sought to obtain police investigation reports in Schaefer's case before his preliminary examination.

¶ 2. After permitting Schaefer's interlocutory appeal, the court of appeals certified the following question to this court: "Does a criminal defendant have a subpoena right to obtain and copy police investigation reports and nonprivileged materials prior to the preliminary hearing?" This question requires interpretation of several Wisconsin statutes as well as the constitutional rights to compulsory process and effective assistance of counsel.

¶ 3. We conclude that a criminal defendant does not have a statutory or constitutional right to compel production of police investigation reports and other nonprivileged materials by subpoena duces tecum prior to the preliminary examination. A criminal defendant who employs the subpoena power in this manner is

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

attempting to engage in discovery without authority in either civil or criminal procedure statutes and in conflict with the criminal discovery statutes. Although a reasonable argument can be made for prosecutors to open their files to defendants at an early point in criminal prosecutions, this argument does not translate into an enforceable right to subpoena police investigation reports and nonprivileged materials before a preliminary examination. Consequently, we affirm the order of the circuit court granting the State's motion to quash Schaefer's subpoena duces tecum.

## I. FACTS AND PROCEDURAL POSTURE

¶ 4. The criminal complaint charged Schaefer with two counts of second-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(2), for conduct that allegedly occurred in 1990. The complaint was signed by Detective Jennifer Toepfer (Toepfer) of the Brookfield Police Department who asserted that she took a statement about the alleged assaults from Kerry M., DOB: 4/6/76, in March 2006 and then conducted an investigation into Kerry's claims.

¶ 5. The complaint makes the following *allegations:* Ronald Schaefer was a teacher and basketball coach at a parochial school in Menomonee Falls. Kerry was a student at the school. Schaefer was Kerry's basketball coach when she was in seventh grade. During the 1988–89 school year, Schaefer began to focus attention on Kerry, complimenting her, telling her that she "looked nice," and giving her the nickname "Special K."

¶ 6. The next year, Schaefer became Kerry's eighth grade teacher. Following his usual practice of picking an eighth-grade student to serve as a babysitter

for his children, Schaefer selected Kerry. Toward the end of her eighth grade year and continuing into the summer—between March 1990 and August 1990—Kerry had a sexual relationship with Schaefer.

¶ 7. Kerry described both her social and sexual encounters with Schaefer over this time period. She reported that Schaefer wrote her notes and poems, which she saved (and subsequently turned over to Detective Toepfer). Schaefer kissed Kerry and told her that he loved her. When the two called each other at their respective homes, Kerry would hang up if Schaefer's wife answered the telephone, and Schaefer would hang up if one of Kerry's parents answered. Kerry considered Schaefer her first boyfriend. Kerry said that in May 1990 she and Schaefer discussed running away together to Kentucky or Tennessee because "it was ok to get married younger there."

¶ 8. Kerry recounted how Schaefer touched her physically and sexually on several occasions during this period. His touching included hugging, kissing, and performing oral sex on her. On one occasion, after swimming, Kerry and Schaefer had sexual intercourse on a bed at his parents' home in Brookfield. On another occasion, the pair had sexual intercourse in Schaefer's bed while Kerry was babysitting his two children. Kerry had not attained the age of 16 years at the time of any of these incidents and thus could not legally consent.

¶ 9. In August 1990, the relationship between Kerry and Schaefer ended when Schaefer told Kerry that they could not see each other anymore because Kerry was starting high school. Kerry later told the detective that she was devastated because she thought Schaefer was her boyfriend.

¶ 10. These *allegations* led the State to file a criminal complaint on May 25, 2006, charging Schaefer

with two counts of second-degree sexual assault of a child. The defendant made his initial appearance on June 1. He posted bond and was advised to have no contact with the victim. He made a second appearance on June 19. At that time a preliminary hearing was scheduled for July 20, 2006, before Waukesha County Court Commissioner Martin O. Binn.

¶ 11. On July 10, Schaefer served a subpoena duces tecum on the "Chief of Brookfield Police Department or Designee," commanding the person to bring the following material before Commissioner Binn on July 13, 2006: "A complete copy of all reports, memorandums, witness interviews and any records related to the investigation and arrest of Ronald Schaefer on suspected criminal offenses relating to the alleged sexual assault of Kerry M. DOB 4/6/76 in 1990." The subpoena duces tecum characterized the "Type of Proceeding" before Commissioner Binn as a "Return of Records."

¶ 12. On July 11, the State moved to quash the subpoena. At a hearing on July 13, Commissioner Binn granted the State's motion, indicating that after he reviewed Chapters 805, 885, 970, 971, and 972 of the Wisconsin Statutes, he considered the defendant's subpoena a request for the circuit court to "re-write the discovery statute, [Wis. Stat. §] 971.23." He also noted that the preliminary examination is "not a mini-trial, and [ ] not a discovery proceeding."

¶ 13. The defendant sought de novo review in circuit court. On July 18 Judge Ramirez conducted a hearing and concluded that there is no mechanism under state statute or the Wisconsin or federal constitutions that specifies that "discovery materials" shall be produced before the preliminary hearing.

¶ 14. On July 19, 2006, Judge Ramirez entered an order granting the State's motion to quash Schaefer's subpoena duces tecum.

¶ 15. Schaefer filed a timely petition for leave to appeal, and the court of appeals stayed further proceedings pending appeal. *See* Wis. Stat. § 809.52.

¶ 16. On December 27, 2006, the court of appeals certified the appeal to this court. We accepted certification on February 12, 2007.

## II. STANDARD OF REVIEW

¶ 17. This case involves questions of statutory interpretation and constitutional law. Statutory interpretation presents a question of law that we review de novo. *State v. Floyd,* 2000 WI 14, ¶ 11, 232 Wis. 2d 767, 606 N.W.2d 155. Similarly, we review constitutional questions, both state and federal, de novo. *Custodian of Records for the Legislative Technology Services Bureau v. State,* 2004 WI 65, ¶ 6, 272 Wis. 2d 208, 680 N.W.2d 792.

## III. ANALYSIS

¶ 18. This is a discovery case, notwithstanding the defendant's protestations to the contrary. Schaefer's appeal asks this court to approve the subpoena power to effect discovery in a criminal case prior to the preliminary examination.

¶ 19. Schaefer does not claim to be seeking some specific piece of information missing from the complaint so that he can fully respond to the charges. Rather, he is trying to force the State to disclose the evidence against him before it has had an opportunity

to present any of that evidence in court. In effect, Schaefer is asking this court to accommodate all felony defendants who wish to conduct discovery of the state's evidence before their preliminary examinations by vesting these criminal defendants with a new discovery tool. Schaefer's arguments that the state and federal constitutions compel this result unreasonably stretch the boundaries of compulsory process and misapprehend the requirements of effective assistance of counsel.

¶ 20. We acknowledge at the outset that the right of an accused to present a defense is fundamental. *Washington v. Texas*, 388 U.S. 14, 19 (1967). It is embodied in the due process guarantees of the Fifth and Fourteenth Amendments and in the Sixth Amendment's command that the accused shall have compulsory process for obtaining witnesses in his favor.[2] Due process preserves an accused's right to challenge the prosecution's case by obtaining evidence tending to establish the accused's innocence or by casting doubt upon the persuasiveness of the prosecution's evidence.[3]

¶ 21. There are several ways for a criminal defendant to gather information and evidence that may be used in his defense. First, a defendant may request information from the state and other sources on a voluntary basis. A criminal defendant will often be given information voluntarily when the custodian has no objection to its release. Second, a defendant may conduct his own investigation of the case through interviews, record and data collection, and other lawful

[2] 5 Wayne R. LaFave, et al., *Criminal Procedure* § 24.3(a), at 469 (2d ed. 1999).

[3] *Id.* at 470.

investigatory techniques. In some situations, a person's investigation will begin even before the person is charged with a crime. Third, a person may use information-gathering techniques such as open records requests that are available to non-litigants. A person is not disqualified from using these familiar procedures simply because he becomes a criminal defendant.[4] Fourth, a defendant may employ the subpoena power at pretrial hearings to litigate specific issues, such as the suppression of evidence, and may also use the subpoena power at trial. Pretrial hearings will have a narrow focus; thus, the evidence sought must be relevant to the issue being litigated and is not likely to be admitted if it fails this test. Finally, a defendant may exercise his discovery rights under the Wisconsin Statutes.

■

¶ 22. Our legislature has codified specific discovery rights for criminal defendants. *See* Wis. Stat. § 971.23 (listing mandatory disclosures for both the district attorney and defendant). In theory, these criminal discovery rights attempt to level the playing field between the state and the accused. *State v. Maday*, 179 Wis. 2d 346, 353, 507 N.W.2d 365 (Ct. App. 1993). Clearly, a defendant has a right to obtain evidence in

---

[4] Wisconsin's open records law, *see* Wis. Stat. §§ 19.31—19.39, does not preclude access to law enforcement records. However, the right to access law enforcement records is not unqualified. *See, e.g.*, Wis. Stat. §§ 19.35(1)(am), 19.36(2) and (8), 905.09, and 905.10. Wisconsin Stat. § 905.09 provides:

> Law enforcement records. The federal government or a state or a subdivision thereof has a privilege to refuse to disclose investigatory files, reports and returns for law enforcement purposes except to the extent available by law to a person other than the federal government, a state or subdivision thereof. The privilege may be claimed by an appropriate representative of the federal government, a state or a subdivision thereof.

the state's possession when that evidence is material and exculpatory. *See, e.g., Brady v. Maryland,* 373 U.S. 83, 87 (1963). The state must turn over material that tends to negate the guilt of the defendant or tends to reduce the defendant's punishment. *Nelson v. State,* 59 Wis. 2d 474, 479, 208 N.W.2d 410 (1973).

¶ 23. Traditionally, however, statutory discovery is designed to assure fairness at a criminal trial. Discovery anticipates a trial at which a fact-finder determines guilt. The court of appeals has stated that "[p]retrial discovery is nothing more than the right of the defendant to obtain access to evidence necessary to prepare his or her case *for trial." Maday,* 179 Wis. 2d at 354 (citing *Britton v. State,* 44 Wis. 2d 109, 117, 170 N.W.2d 785, 789 (1969)) (emphasis added). "Providing a defendant with meaningful pretrial discovery underwrites the interest of the state in guaranteeing that the quest for the truth will happen during a fair *trial." Maday,* 179 Wis. 2d at 354–55 (emphasis added).

¶ 24. A preliminary examination is not a trial. *State ex rel. Lynch v. County Ct., Branch III: Cleveland,* 82 Wis. 2d 454, 465–66, 262 N.W.2d 773 (1978). Its purpose is not to determine guilt beyond a reasonable doubt. *State v. Anderson,* 2005 WI 54, ¶ 24, 280 Wis. 2d 104, 695 N.W.2d 731. Its purpose is merely to determine if there is probable cause to believe that the defendant has committed a felony. Wis. Stat. § 970.03(1). Hence, when a defendant issues a subpoena with a broad demand for records before the preliminary examination, he is trying to expand the scope of statutory discovery and move it to a preliminary stage of the criminal proceedings. At this early point, the state has not settled on final charges, may not have completed its

investigation, and may not fully understand the complexities of its own case. While the preliminary examination often affords the defendant new information and detail about the state's evidence, this new information is a byproduct, not the objective, of the preliminary examination.[5]

¶ 25. This case presents an opportunity to address the relationship between pretrial discovery and the preliminary examination. We begin with a discussion of the nature and purpose of discovery, as well as the purpose and scope of the preliminary examination.

A. Discovery and the Preliminary Examination

¶ 26. We begin with discovery because of the character of the information the defendant seeks. Schaefer's "Subpoena and Certificate of Appearance" uses Form 126. His document adds the words "Duces Tecum" under the form's heading. The subpoena is issued to "Chief of Brookfield Police Department *or* Designee." (Emphasis added.) It demands that the "witness" bring "[a] complete copy of all reports, memorandums, witness interviews and any records related to the investigation and arrest of Ronald Schaefer on suspected criminal offenses or relating to his alleged sexual assault of Kerry M. DOB 4/6/76 in 1990."

¶ 27. The expansive swath of Schaefer's subpoena duces tecum and the subpoena's indifference regarding

---

[5] 4 Wayne R. LaFave, et al., *Criminal Procedure* § 14.1(b), at 115 (2d ed. 1999). *See also Whitty v. State,* 34 Wis. 2d 278, 287, 149 N.W.2d 557 (1967) (recognizing that the preliminary examination may be helpful to a criminal defendant and noting its "incidental fringe benefits").

For an excellent discussion of the principle that the preliminary examination should not be used for purposes of discovery, see *Desper v. State,* 318 S.E.2d 437, 441–42 (W.Va. 1984).

which person should appear with the requested information immediately raise questions about the subpoena's purpose. Because Schaefer makes no showing of a particularized need of information for the preliminary examination, his demand to inspect law enforcement files amounts to generalized, unrestricted discovery. This court decided in *Lynch* that giving defendants the right to compulsory inspection of the state's files before the preliminary examination will impede the orderly process of discovery prescribed by statute, unjustifiably delay the administration of justice, and needlessly complicate the relatively informal procedures of the preliminary examination. *Lynch,* 82 Wis. 2d at 466.[6]

---

[6] The facts in *Lynch* are instructive. Seven persons were prosecuted in Dane County for feloniously delivering cocaine. *State ex rel. Lynch v. County Ct., Branch III: Cleveland,* 82 Wis. 2d 454, 458, 262 N.W.2d 773 (1978). When the State's first witness was cross-examined at the preliminary examination, counsel for one of the seven defendants demanded receipt of any exculpatory material contained in reports prepared by the witness. *Id.* This demand came after defense counsel had been unsuccessful in efforts to persuade the court to order the witness to produce his reports on the incident, despite the fact that he had not relied on his notes or reports to refresh his recollection prior to his testimony. *Id.*

In response to this demand, the State offered to submit its files for each of the seven defendants to the county court for *in camera* inspection, thereby permitting the court to determine whether exculpatory evidence was present. *Id.* The county court responded that its review of the seven files would take too long and would delay the preliminary examination, and it ordered the district attorney to submit the files for inspection by defense counsel. *Id.* On appeal, the county court's order was prohibited by the circuit court, and this court upheld the circuit court. *Id.*

From our review of the *Lynch* decision and the *Lynch* briefs, it is obvious that defense counsel wanted access to the police

¶ 28. The Wisconsin Statutes do not define the term "discovery."[7] As a result, we must refer to other authority.

¶ 29. *Black's Law Dictionary* defines "discovery" as "[t]he act or process of finding or learning something that was previously unknown" and *"[c]ompulsory* disclosure, at a party's request, of information that relates to the litigation." *Black's Law Dictionary* 478 (7th ed. 1999) (emphasis added). The first definition is general; the second relates specifically to legal proceedings. The California Supreme Court commented on the difference in *Arnett v. Dal Cielo,* 923 P.2d 1, 10–11 (Cal. 1996), in a discussion of civil discovery:

> [The word "discover" can be used] in its general sense of finding something out by search or observation. . . .
>
> [D]iscovery also has a specific legal meaning, to wit, the formal exchange of evidentiary information and materials between parties to a pending action. The two meanings of the word are well recognized in the dictionaries. Thus a leading legal dictionary first defines

investigation reports contained in the files of the seven defendants. Assistant Attorney General William Gansner argued successfully in his brief that the defendants were not entitled to obtain the same reports via the county court's order that they were unable to obtain "by normal evidentiary or statutory discovery means."

[7] The Wisconsin Statutes describe the types of items subject to discovery and various methods for effecting discovery. *See* Wis. Stat. §§ 804.01(1) ("Discovery methods"), 804.01(2) ("Scope of discovery"), 971.23 ("Discovery and inspection"). Materials subject to discovery in civil cases are outlined in Wis. Stat. § 804.01(2)(a)-(d).

Similarly, Wis. Stat. §§ 971.23(1) and 971.23(2m), respectively, list disclosures required to be made by the district attorney and the defendant in a criminal proceeding.

"discovery" to mean, *"In a general sense,* the ascertainment of that which was previously unknown; the disclosure or coming to light of what was previously hidden.". . . (Black's Law Dict. (6th ed. 1990) p. 466). But the same work also defines the word ["discovery"] in its specifically legal sense, as "[t]he pre-trial devices that can be used by one party to obtain facts and information about the case from the other party in order to assist the party's preparation for trial," . . . Even nonlegal dictionaries draw this distinction . . . "3. *Law.* Data or documents that a party to a legal action is compelled to disclose to another party either prior to or during a proceeding." (Am. Heritage Dict. (2d college ed. 1985) p. 403).

¶ 30. Discovery, in the legal sense, is distinguishable from less formal information-gathering techniques. Discovery is grounded in statute or court rule, is designed to avoid unfairness and surprise in litigation, and may be enforced by judicial orders and sanctions. As a result, discovery, in the legal sense, is subject to reasonable terms and limitations as to timing, convenience, cost, methodology, privilege, and purpose. This is especially true of discovery in criminal cases, for criminal discovery operates on different principles from civil discovery. In criminal discovery, the stakes are different, the purposes are different, the procedures are different, and the disclosure of information is understandably not reciprocal.

¶ 31. The essence of "discovery" for purposes of analysis here is "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation." *Black's Law Dictionary* 478 (7th ed. 1999). Schaefer's subpoena duces tecum seeks to compel a law enforcement agency to produce information and material "relate[d] to the litigation" before the preliminary examination. *Id.* Hence, Schaefer is using the subpoena duces tecum as a discovery tool.

¶ 32. We turn now to the preliminary examination. There is no constitutional right to a preliminary examination. *State v. Williams,* 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). The right to such an examination stems purely from statute. *State ex rel. Klinkiewicz v. Duffy,* 35 Wis. 2d 369, 373, 151 N.W.2d 63 (1967). As noted above, Wis. Stat. § 970.03 provides a preliminary examination for the specific purpose of determining whether there is probable cause to believe a felony has been committed by the defendant. Wis. Stat. § 970.03(1).

¶ 33. The independent screening function of the preliminary examination serves as a check on the prosecutorial power of the executive branch. An accused has the option to assure that the hearing is scheduled expeditiously so that he may be discharged quickly if the government cannot justify its right to go forward. *Klinkiewicz,* 35 Wis. 2d at 373.

¶ 34. We examined the scope of the preliminary examination in *State v. Dunn,* 121 Wis. 2d 389, 359 N.W.2d 151 (1984). We emphasized that a preliminary hearing as to probable cause is not a preliminary trial or a full evidentiary trial on the issue of guilt beyond a reasonable doubt. *Id.* at 396 (citing *State v. Hooper,* 101 Wis. 2d 517, 544, 305 N.W.2d 110 (1981)). Rather, the preliminary examination is "intended to be a summary proceeding to determine essential or basic facts as to probability." *Dunn,* 121 Wis. 2d at 396–97. "[A] preliminary hearing is not a proper forum to choose between conflicting facts or inferences, or to weigh the state's evidence against evidence favorable to the defendant." *Id.* at 398. The preliminary examination is not a mini-

trial on the facts; its purpose is merely to determine whether there is sufficient evidence that charges against a defendant should go forward. *See id.*

¶ 35. Significantly, a defendant may present evidence at a preliminary examination. Wis. Stat. § 970.03(5).[8] He may call witnesses to rebut the plausibility of a witness's story and probability that a felony was committed. *See Dunn,* 121 Wis. 2d at 396–98. In this regard, the defendant must have compulsory process to assure the appearance of his witnesses and their relevant evidence.

¶ 36. However, a defendant's right to present evidence at a preliminary examination is not boundless. In *State v. Knudson,* 51 Wis. 2d 270, 187 N.W.2d 321 (1971), we held that Knudson's attempt to call two witnesses—the victim's mother and the chief of police—was an effort "to expose inconsistencies in the accounts given by the victim to various people" and impermissible *at the preliminary examination. Id.* at 280–81. After the victim testified to the factual basis for the charge of child enticement, Knudson sought to impugn the victim's credibility and, in the process, "gain some valuable information for his defense" by presenting contradictory testimony. *Id.* at 281. The court described this as pretrial discovery beyond the role of the preliminary examination. *Id. See also State ex rel. Funmaker v. Klamm,* 106 Wis. 2d 624, 630, 317 N.W.2d

---

[8] Wisconsin Stat. § 970.03(5) states: "All witnesses shall be sworn and their testimony reported by a phonographic reporter. The defendant may cross-examine witnesses against the defendant, and may call witnesses on the defendant's own behalf who then are subject to cross-examination."

458 (1982) (observing that "possible weaknesses in [the witness's] identification are matters affecting . . . weight and credibility" and not subjects for the preliminary examination).

¶ 37. Because the statutory purpose of the preliminary examination is narrowly focused upon a determination of probable cause, Wis. Stat. § 970.03(1), a defendant's right to present evidence at the hearing is limited to "essential facts as to probability" that the alleged offense occurred. *Knudson,* 51 Wis. 2d at 280 (citing *State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 228, 161 N.W.2d 369 (1968)). This means that although a defendant may subpoena witnesses and evidence for the preliminary examination, *see* Wis. Stat. §§ 973.03(5), 972.11(1), and 885.01, his subpoena may be quashed, a witness may not be allowed to testify, or evidence may be excluded if the defendant is unable to show the relevance of the testimony or evidence to the rebut probable cause.

¶ 38. When a defendant's subpoena duces tecum seeks all investigatory material in the possession of the police, *and* the subpoena is returnable *before* the preliminary examination, the subpoena is fishing for elements of the state's case, *see Knudson,* 51 Wis. 2d at 280, and is not proper.

¶ 39. We do not see how Schaefer's subpoena duces tecum aimed at securing "[a] complete copy of *all* reports, memorandums, witness interviews and *any* records related to the investigation and arrest of Ronald Schaefer" can be viewed as a narrow attempt to secure essential information to rebut the State's showing of probable cause. (Emphasis added.) It is plainly an attempt to effect discovery.

300

¶ 40. To summarize, we conclude that the purpose of a preliminary examination is limited to an expeditious determination of whether probable cause exists for the state to proceed with felony charges against a defendant. The limited purpose of the preliminary examination does not permit a criminal defendant to compel discovery in anticipation of the hearing. Schaefer's subpoena duces tecum in the instant case is an effort to effect discovery.

B. Statutory Rights to Subpoena Evidence and to Discovery in a Criminal Proceeding

¶ 41. Schaefer contends that the analysis above is inconsistent with the broad subpoena power in the Wisconsin Statutes. We disagree. Schaefer's subpoena duces tecum is 1) not authorized by our subpoena statutes, and 2) inconsistent with our criminal discovery statutes.

¶ 42. The subpoena power is set out in multiple statutes. For instance:

(A) Wisconsin Stat. § 757.01(1) provides that courts of record shall have power "[t]o issue process of subpoena, requiring the attendance of any witness, . . . to testify in any matter or cause pending or triable in such courts."

(B) Wisconsin Stat. § 885.01(1) authorizes a court to "require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state." This statute provides a court with general power, at the behest of an attorney, to subpoena both witnesses and documents. *See* Wiseman, et al., 9 *Wisconsin Practice: Criminal Practice and Procedure* § 24.11 (1996).

(C) Wisconsin Stat. § 805.07(1) provides that "[a] subpoena may also be issued by any attorney of record in a *civil action* or special proceeding to compel attendance of witnesses for deposition, hearing or trial in the action or special proceeding." (Emphasis added.) Wisconsin Stat. § 805.07(2)(a) states that "[a] subpoena may command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein."

¶ 43. As a general rule,. Wis. Stat. § 972.11(1) makes civil procedure statutes part of the criminal code. The subsection provides that the rules of evidence and practice in civil actions, including Wis. Stat. § 805.07, "shall be applicable in all criminal actions *unless the context of a section or rule manifestly requires a different construction.*" (Emphasis added.) The subsection then adds: "Chapter[] 885 . . . shall apply in all criminal proceedings." Wis. Stat. § 972.11(1).

¶ 44. Considered broadly, courts and attorneys of record have the power to compel the attendance of witnesses and the production of evidence by subpoena in any proceeding. But, unlike present Federal Rule of Civil Procedure 45, Wis. Stat. § 805.07 appears to link the production of documentary evidence with the appearance and testimony of a witness.[9] This is signifi-

---

[9] Wisconsin Stat. § 805.07(2)(a) is based on Federal Rule of Civil Procedure 45(b) *as it existed circa 1975.* Patricia Graczyk, *The New* Wisconsin Rules of Civil Procedure, Chapters 805–807, 59 Marq. L. Rev. 671, 686 (1976). At that time, Rule 45 wedded the subpoena duces tecum with the subpoena ad testificandum—the subpoena for witness testimony. David D. Siegel, Practice Commentaries Fed. Rules Civ. Proc. Rule 45, 28 U.S.C.A at 355 ("Under Rule 45 as amended in 1991, a subpoena duces tecum seeking the production of documents (or other materials) from a nonparty may be used independently of the

cant because Wis. Stat. § 805.07(1) authorizes a subpoena for the attendance of a witness "for deposition, hearing or trial." Schaefer is asking this court to establish an additional proceeding, denominated by him as a "Return of Records," that will help the defendant prepare for his preliminary examination without requiring any witness to testify. Our criminal procedure statutes do not contemplate a court proceeding to receive evidence preliminary to a preliminary examination, and our civil procedure statutes neither recognize nor compel such a proceeding.

¶ 45. Wisconsin Stat. § 804.09, entitled "Production of documents and things and entry upon land for inspection and other purposes," is the civil procedure statute that most closely approximates what Schaefer is trying to accomplish in this case. However, § 804.09(1) involves a "request," not a "command," and § 804.09(1) is located in the chapter on "Civil Procedure—Depositions and *Discovery*." (Emphasis added.) In short, no subpoena statute authorizes Schaefer's action.

¶ 46. Schaefer's attempt to utilize the *general* subpoena power for discovery prior to his preliminary examination also conflicts with Wis. Stat. §§ 971.31(5)(b) and 971.23. Wisconsin Stat. § 971.23 is the criminal discovery statute. Wisconsin Stat. § 971.31(5)(b) pro-

---

regular testimonial subpoena; *the two are no longer wedded, as they were under the prior version of Rule 45.*")(emphasis added).

Wisconsin modified Wis. Stat. § 805.07(2) in 1995 (effective January 1, 1996) to add third-party subpoenas for discovery purposes. Supreme Court Order No. 95–09, 195 Wis. 2d xiii (1996). However, subsection (4) of Wis. Stat. § 805.07, which creates the form for subpoenas and instructions on how to add a subpoena duces tecum, was not amended; and we find no evidence that the amended statute intended to break the linkage found in the text.

vides explicitly that in felony actions, "motions under s. 971.23 . . . *shall not be made at a preliminary examination* and not until an information has been filed." (Emphasis added.)

■■

¶ 47. "[G]enerally where a specific statutory provision leads in one direction and a general statutory provision in another, the specific statutory provision controls." *Marder v. Bd. of Regents of Univ. of Wis.*, 2005 WI 159, ¶ 23, 286 Wis. 2d 252, 706 N.W.2d 110. This principle of statutory interpretation aligns with the important qualification in Wis. Stat. § 972.11(1) that a civil practice applies to criminal procedure "*unless* the context of a section or rule manifestly requires a different construction." Wis. Stat. § 972.11(1) (emphasis added).

¶ 48. Schaefer's statutory argument is that Wis. Stat. § 972.11 allows a criminal defendant access to the civil subpoena duces tecum power embodied in Wis. Stat. § 805.07(2). He asserts that § 972.11 applies the general subpoena power in Wis. Stat. § 885.01 to criminal proceedings. He further contends that the subpoena duces tecum constitutes a "judicial process independent of discovery rules." In view of this argument, if we were to conclude that Schaefer was not attempting to pursue discovery with his subpoena duces tecum, we might have difficulty concluding that his subpoena request was inconsistent with the timing limitation in Wis. Stat. § 971.31(5)(b).[10]

¶ 49. Wisconsin Stat. § 971.23 sets out the state's discovery obligations. Subsection (1) provides in part:

> (1) What a district attorney must disclose to a

---

[10] Wisconsin Stat. § 805.07(2)(b) refers specifically to "discovery" with respect to a third party.

defendant. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state[.]

Wis. Stat. § 971.23(1).

¶ 50. Paragraphs (a) through (h) of the statute then outline the specific disclosures the district attorney must make:

(a) Any written or recorded statement concerning the alleged crime made by the defendant, including the testimony of the defendant in a secret proceeding under s. 968.26 or before a grand jury, and the names of witnesses to the defendant's written statements.

(b) A written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial and the names of witnesses to the defendant's oral statements.

(bm) Evidence obtained in the manner described under s. 968.31(2)(b), if the district attorney intends to use the evidence at trial.

(c) A copy of the defendant's criminal record.

(d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.

(e) Any relevant written or recorded statements of a witness named on a list under par. (d), including any audiovisual recording of an oral statement of a child under s. 908.08, any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary

305

of the expert's findings or the subject matter of his or her testimony, and the results of any physical or mental examination, scientific test, experiment or comparison that the district attorney intends to offer in evidence at trial.

(f) The criminal record of a prosecution witness which is known to the district attorney.

(g) Any physical evidence that the district attorney intends to offer in evidence at the trial.

(h) Any exculpatory evidence.

Wis. Stat. § 971.23(1)(a)-(h).

¶ 51. These mandatory disclosures should be compared to Schaefer's subpoena demand: "A complete copy of *all* reports, memorandums, witness interviews and *any* records related to the investigation and arrest of Ronald Schaefer on suspected criminal offenses or relating to the alleged sexual assault of Kerry M. DOB 4/6/'76 in 1990." (Emphasis added.)

¶ 52. The demands in the defendant's subpoena duces tecum clearly overlap the discovery materials outlined in Wis. Stat. § 971.23. In some respects, the subpoena demands exceed the discovery materials authorized by the statute. Because the mandatory disclosures outlined in § 971.23(1) include information that is customarily found in police investigative reports or similar records,[11] we are hard pressed to distinguish the defendant's subpoena duces tecum from a discovery demand under Wis. Stat. § 971.23(1).

---

[11] Professor LaFave has noted that materials contained in police reports equate with discovery:

Police investigative reports may fall in one or more of several categories of discoverable material. Where the report contains a recital of the comments of a defendant, codefendant or witness sufficiently complete to constitute a recorded statement of that

¶ 53. As noted above, Wis. Stat. § 971.31(5)(b) provides that "[i]n felony actions, motions . . . *under s. 971.23 . . . shall not be made at a preliminary examination and not until an information has been filed.*" (Emphasis added.)

¶ 54. Schaefer's subpoena duces tecum arguably is governed by the limitation on pretrial discovery found in Wis. Stat. § 971.31(5)(b). Schaefer is seeking discovery materials (police records). His subpoena satisfies some of the criteria of a "motion." *See* Wis. Stat. § 971.30. The police chief's failure to honor the subpoena would likely lead to "an application for an order" to comply. Wis. Stat. § 971.30(1). *Black's Law Dictionary* defines "motion" as "A written or oral application requesting a court to make a specified ruling or order." *Black's Law Dictionary* 1031 (7th ed. 1999). In effect, Schaefer has requested the circuit court to order, pursuant to its subpoena power, the Brookfield Chief of Police or designee to appear in court with the documents requested. We think it makes little sense to disregard the timing limitations on discovery in Wis. Stat. § 971.31(5)(b) simply because Schaefer does not rely on Wis. Stat. § 971.23, has tried to exceed the scope of discovery in § 971.23, and has not labeled his subpoena duces tecum as a "motion." To say that Schaefer's subpoena duces tecum is not a "motion" elevates form over substance.

¶ 55. This case requires us to interpret several statutes. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper and intended effect." *State ex rel.*

person, that portion of the report may be subject to discovery under the appropriate provision for recorded statements.

4 Wayne R. LaFave, et al., *Criminal Procedure* § 20.3(k), at 879 (2d ed. 1999).

*Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. Statutes involving the same subject matter "must be construed in a manner that harmonizes them in order to give each full force and effect." *Wis. Power & Light Co. v. Pub. Serv. Comm'n of Wis.,* 2006 WI App 221, ¶ 15, 296 Wis. 2d 705, 725 N.W.2d 423.

¶ 56. The plain truth is that if we permitted the general subpoena authority to effect discovery in a criminal case before the preliminary examination, there would be nothing left of the limiting conditions in Wis. Stat. §§ 971.23(1) and 971.31(5)(b). This would not be "harmonizing" the general subpoena statutes with the criminal discovery statutes.

¶ 57. Wisconsin Stat. § 971.23(1) requires a district attorney to disclose discovery material "within a reasonable time before trial." Requiring the state[12] to disclose discovery material *before* the preliminary examination—*before* the court has even authorized a

---

[12] Schaefer argues that the Brookfield Police Department and the district attorney are not a single entity; therefore, the prohibitions on discovery in Wis. Stat. § 971.31(5)(b) are inapplicable. This contention is not valid. Although separate entities in fact, the Brookfield Police Department and the district attorney's office are related for considerations of the state's duty of disclosing evidence to criminal defendants. This court has stated that "[u]nder [Wis. Stat.] § 971.23, the State's discovery obligations may extend to information in the possession of law enforcement agencies but not personally known to the prosecutor." *State v. DeLao,* 2002 WI 49, ¶ 21, 252 Wis. 2d 289, 643 N.W.2d 480. As a result, we are reluctant to treat the police department and the district attorney's office as separate entities

trial—is plainly at odds with the statutory scheme. This conclusion about timing is reinforced by the language in Wis. Stat. § 971.31(5)(b) that discovery motions "shall not be made at a preliminary examination and not until an information has been filed."

before an information is filed if they are treated as inextricably linked for purposes of discovery after the information is filed. *Id.*

The court of appeals came to a similar conclusion. In a case involving the state's loss of a tape-recording of a defendant, the court stated:

> We also reject the trial court's reasoning that the actions of the police authorities in losing the tape should not be visited upon the state as the prosecuting entity. For purposes of the criminal discovery statutes, we view an investigative police agency which holds relevant evidence as an arm of the prosecution. In most criminal cases, the evidence against the accused is garnered, stored and controlled by the investigating police agency. Depending upon local practice, many courts and district attorneys entrust the custody and control of such material to the police even after it has been elevated to formal evidentiary status in a criminal proceeding.
>
> The trial court's reasoning would apparently sanction the loss of relevant evidence only if committed by the district attorney's office, but not by the principal investigative agency. This distinction is neither reasonable nor valid.

*State v. Martinez*, 166 Wis. 2d 250, 260, 479 N.W.2d 224 (Ct. App. 1991) (footnote omitted).

More important than the link between police and prosecutor for discovery purposes is the reality that the principal documents of interest in the district attorney's file are the police reports. These documents, which constitute a comprehensive summary of law enforcement's investigation of the alleged crime, normally serve as the basis for the criminal complaint. The district attorney has never been *required* to disclose the totality of law enforcement reports, only specific pieces of information, especially exculpatory evidence. Here the defendant demands the totality of law enforcement records, putting his subpoena at odds with the criminal discovery statute.

309

¶ 58. Equally important, Wis. Stat. § 971.23 does not require the state to turn over all the information in its possession. For instance, Wis. Stat. § 971.23(1)(d) requires the state to disclose "[a] list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only." If Schaefer were entitled to obtain by subpoena duces tecum the names of all witnesses who have surfaced in the police reports as well as their statements, his need—and the need of all defendants—for § 971.23 discovery would be substantially reduced. Section 971.23(1) would then be used primarily to make sure that the state discloses any new information that it obtains and reveals its trial strategy, i.e., what witnesses and physical evidence the state plans to present at trial and what evidence it has decided not to present.

¶ 59. It must be noted that the limitations on the scope of discovery in Wis. Stat. § 971.23(1) may not always prevail against a subpoena duces tecum *after* an information is filed. We have previously implied that a subpoena duces tecum may have to be honored if the defendant shows a "particularized need" for information in the possession of the state. *See Lynch*, 82 Wis. 2d at 466–68. That is not the case here. The defendant has no statutory subpoena right to obtain and copy police investigation reports and nonprivileged materials prior to his preliminary examination.

C. Constitutional Rights to Compulsory Process and Effective Assistance of Counsel

¶ 60. Schaefer also raises challenges under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. First, he argues that the rights to compulsory process

found in both of these constitutional provisions include the right to access and copy police investigation reports and nonprivileged materials prior to a preliminary hearing. Second, he argues that his Sixth Amendment right to effective assistance of counsel cannot be satisfied without his attorney having access to these materials before the preliminary examination.

¶ 61. We address these challenges in turn and conclude that Schaefer has no state or federal constitutional right to obtain and copy police investigation reports and nonprivileged materials by subpoena prior to his preliminary hearing.

## 1. Right to Compulsory Process

¶ 62. The Sixth Amendment to the United States Constitution provides that the accused in a criminal proceeding shall have the right "to have compulsory process for obtaining witnesses in his favor."[13] U.S. const. amend. VI. Similarly, the Wisconsin Constitution

---

[13] The Sixth Amendment to the United States Constitution reads as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

U.S. Const. amend. VI. The language of the Sixth Amendment refers to "witnesses," but the Supreme Court has held that the Compulsory Process Clause also applies to documentary materials. *See United States v. Nixon*, 418 U.S. 683, 711–13 (1974). *See also United States v. Hubbell*, 530 U.S. 27, 54 (2000) (Thomas, J., concurring).

311

provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have compulsory process to compel the attendance of witnesses in his behalf[.]" Wis. Const. art. 1, § 7. Although this court has the prerogative to afford greater protection to a criminal defendant under a provision of the Wisconsin Constitution than is mandated by an equivalent provision in the United States Constitution, *State v. Doe,* 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977), the court tends to interpret and apply equivalent provisions in the same manner. *See State v. Agnello,* 226 Wis. 2d 164, 180–81, 593 N.W.2d 427 (1999) (stating that "[w]here . . . the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution").

¶ 63. In *Washington v. Texas* (1967), the Supreme Court explained that the right to compulsory process is plainly "the right to present a defense[.]" *Washington,* 388 U.S. at 19. The Court reviewed a criminal defendant's Sixth Amendment challenge to two Texas statutes that prohibited persons charged or convicted as co-participants in the same crime from testifying for one another, even though there was no bar to their testifying for the state. *Id.* at 16–17. The Court held that this statutory scheme violated the defendant's right to compulsory process for obtaining witnesses at trial:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's *to the jury* so it may decide where the

truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

*Id.* at 19 (emphasis added). Thus, compulsory process for securing favorable witnesses is "so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment." *Id.* at 17–18. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973).

¶ 64. Twenty years after *Washington,* the Court noted that it has "had little occasion to discuss the contours of the Compulsory Process Clause."[14] *Pennsylvania v. Ritchie,* 480 U.S. 39, 55 (1987). In *Ritchie,* the Court reviewed Sixth Amendment claims of a criminal defendant convicted of various sexual offenses against his daughter. *Id.* at 39. The defendant, Ritchie, sought pretrial discovery—via subpoena—of ostensibly confidential records from Children and Youth Services (CYS), a Pennsylvania protective agency. *Id.* at 43. Ritchie claimed he was entitled to review CYS's file to discover information that might be useful in contradicting testimony favorable to the state. *Id.* at 53. Because it noted that defense counsel was able to cross-examine

---

[14] "This paucity of compulsory process rulings is attributable largely to the Court's decision to address initially under the Due Process Clause claims that the government failed to assist in identifying or locating defense witnesses, or improperly interfered with the defense's use of subpoenas." 5 Wayne R. LaFave, et al., *Criminal Procedure* § 24.3(a), at 470 (2d ed. 1999).

all trial witnesses fully, the Court determined that the Pennsylvania Supreme Court erred in holding that the failure to disclose the CYS file violated the Confrontation Clause. *Id.* at 54.

¶ 65. The Court then turned to the compulsory process claim. The Court acknowledged that Sixth Amendment applicability to discovery disputes was unsettled; hence, it utilized a due process analysis. *Id.* at 56. The Court said it had articulated "some of the specific rights" secured by the Compulsory Process Clause of the Sixth Amendment. *Id.* "Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses *at trial* and the right to put *before a jury* evidence that might influence the *determination of guilt.*" *Id.* (emphasis added).

¶ 66. The Court was reluctant to establish an unconditional discovery right under the Sixth Amendment. Thus, it analyzed the case on Fourteenth Amendment due process grounds. The Court concluded that the Compulsory Process Clause "provides no *greater* protections in this area than those afforded by due process." *Ritchie,* 480 U.S. at 56. Stated another way, unless due process requires defense access to specific evidence, the Compulsory Process Clause cannot provide substitute authority for such access.

¶ 67. These comments by the Court point the compass of the Compulsory Process Clause toward a defendant's right to the compelled production of evidence in anticipation of *trial,* not in anticipation of a preliminary examination. Professor LaFave has observed that "[t]he Compulsory Process Clause naturally suggests some constitutional entitlement to *trial evidence.*" 5 Wayne R. LaFave, et al., *Criminal Procedure* § 24.3(a), at 469 (2d ed. 1999) (emphasis added).

314

¶ 68. Thus, our holding in *Lynch,* founded upon due process, applies here and circumscribes a criminal defendant's compulsory process right to access the state's files prior to his preliminary examination.

¶ 69. In *Lynch,* we held that, under the Due Process Clause, a criminal defendant has no right to inspect the state's files for the existence of exculpatory evidence prior to a preliminary examination. *Lynch,* 82 Wis. 2d at 465–68. The constitutional right to such exculpatory material "is in the right to a fair *trial* guaranteed by [due process]." *Id.* at 465 (citing *United States v. Agurs,* 427 U.S. 97, 107 (1976); *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). We concluded:

> Inspection of the state's files by the defense at this early stage, where there has been no showing of particularized need for inspection, can serve only as an opportunity for generalized, unrestricted discovery, rather than as a device for the constitutionally mandated disclosure of specific exculpatory material. Such discovery will impede the orderly processes of discovery prescribed by statute, see: secs. 971.23 to 971.25, Stats., and will circumvent the legislative determinations reflected in those statutes; will unjustifiably delay the administration of justice; and will needlessly complicate the relatively informal procedures applicable at this early stage of a prosecution. This harm is inherent in the order of the county court.

*Lynch,* 82 Wis. 2d at 466 (footnote omitted).

■■

¶ 70. We conclude that *Lynch* controls the compulsory process challenge in the instant case. There is no compulsory process right to subpoena police investigation reports and nonprivileged materials before the preliminary examination.

¶ 71. Schaefer asserts that if *Lynch* applies, he has demonstrated a "particularized need" for access to police records because of a "sixteen year delay in charging and its consequent effect on memory." We are not persuaded. An extended period of time between commission of the alleged offense and the filing of a criminal complaint may provide justification for subpoena access to police investigatory records under extraordinary circumstances. *See Lynch,* 82 Wis. 2d at 466. However, in Schaefer's case, the criminal complaint is sufficiently detailed to allow him to identify the complainant[15] and the alleged circumstances of the charges and to prepare to rebut the plausibility of the complainant's accusations and probable cause. The lengthy span of time since the alleged offenses will not incapacitate this defendant from preparing for the preliminary examination, and it does not justify the unbridled access to police investigatory materials that the defendant seeks.

¶ 72. We note that this court has also addressed compulsory process in the context of a circuit court's subpoena ordering two newspaper reporters to appear at a pretrial hearing regarding the identities of their sources for several stories they wrote about a murder. *State ex rel. Green Bay Newspaper Co. v. Cir. Ct., Branch 1, Brown County,* 113 Wis. 2d 411, 415–16, 335 N.W.2d 367 (1983). We concluded that the circuit court erred when it ordered in camera disclosure of the reporters' sources and held the reporters in contempt for refusing to disclose this information. *Id.* at 429.

---

[15] At his initial appearance, Schaefer was admonished not to contact the victim listed in the complaint. We have no record evidence that Schaefer claimed inability to comply with this condition because of uncertainty about the identity of the complainant.

¶ 73. Weighing the defendant's right to compulsory process for witnesses in his favor against the journalist's qualified nondisclosure privilege, we recognized that "a criminal defendant does not have an unqualified right to subpoena witnesses." *Id.* at 420. We observed that "[f]or the constitutional right to compulsory process to be invoked, a defendant must, if the subpoena is challenged, show there is a reasonable probability that the subpoenaed witnesses' testimony will be competent, relevant, material and favorable to his defense." *Id.* at 420–21.[16]

¶ 74. We went on to analyze the efficacy of the circuit court's order requiring in camera disclosure of reporter sources, concluding that the facts of the case did not suggest a need for such disclosure. We outlined a procedure for the circuit court to evaluate compulsory process rights implicated by desired evidence based upon whether "the evidence is necessary to the defense." *Id.* at 423. "Information is necessary to the defense if it tends to support the theory of defense which the defendant intends to assert *at trial*." *Id.* (emphasis added).

¶ 75. The *Green Bay Newspaper* case evaluated compulsory process rights in terms of their relationship to *trial* evidence. Inasmuch as a criminal defendant does not have an unqualified right to require the appearance of any and all persons as witnesses for a *trial*, and a defendant's right to compulsory process at *trial* must satisfy certain standards, *see id.* at 420–21, we conclude a fortiori that the compulsory process

---

[16] *See also United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982) (observing that a violation of the Sixth Amendment exists where the defendant is deprived of access to favorable evidence that is "relevant ... material ... and vital" to his defense) (citation omitted).

rights of a criminal defendant at a preliminary stage of the criminal proceedings also must be subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308, (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). We have previously observed that "even though a defendant's right to present certain evidence is constitutionally protected, that right may have to 'bow to accommodate other legitimate interests in the criminal trial process.' " *State v. Pulizzano*, 155 Wis. 2d 633, 653, 456 N.W.2d 325 (1990) (quoting *Chambers*, 410 U.S. at 295). In our view, there is a legitimate interest in preserving the statutory scheme that prescribes pretrial discovery limitations under Wis. Stat. §§ 971.31(5)(b) and 971.23. Therefore, we decline to expand a criminal defendant's compulsory process rights to encompass a right to subpoena police reports and other non-privileged investigatory materials for examination and copying in anticipation of a preliminary hearing.

¶ 76. Schaefer suggests that we adopt a procedure in which Wisconsin circuit courts would review subpoena duces tecum materials prior to the preliminary examination to resolve disputes regarding privilege, relevance, and materiality. He notes that Illinois has adopted such a procedure, *see People ex rel. Fisher v. Carey,* 396 N.E.2d 17 (Ill. 1979), and he urges Wisconsin to follow suit.

¶ 77. We respectfully decline this invitation. In *Carey,* the Illinois Supreme Court concluded that:

> Subpoenaed material should be sent directly to the court because the subpoena is a judicial process or court writ, whereas discovery is the parties' procedure, a distinguishable concept under our rules. . . . The court then determines the relevance and materiality of the materials, and whether they are privileged, as well as whether

the subpoena is unreasonable or oppressive. The State's attorney, of course, must be fully aware of the records sought from the investigative agency by the subpoena *in order for him to object.*

*Carey,* 396 N.E.2d at 19–20 (citation omitted) (emphasis added).[17]

¶ 78. The underlined language implies that the Illinois court established a proceeding—*before* the preliminary hearing—to hear objections and settle evidentiary disputes, even though Illinois rules at the time precluded the use of a subpoena to circumvent formal discovery (which was not scheduled to go into effect until "following indictment or information."). *Id.* at 19; *see* 58 Ill. 2d Rule 411, 65 Ill. 2d Rule 412(g). The *Carey* court appears to have concluded that its ruling was constitutionally required.

¶ 79. The Illinois Supreme Court's analysis is clearly supportive of Schaefer's position. On the other hand, the Illinois Supreme Court's analysis does not square with subsequent decisions of the United States Supreme Court, most notably *Ritchie.* The analysis also conflicts with our decision in *Lynch.* The Illinois court's heavy reliance on *United States v. Burr,* 25 Fed. Cas. 30 (C.C.D. Va. 1807), is intriguing, but that decision has no precedential value for us because it is not a decision by the United States Supreme Court, and it predated modern discovery rules.

¶ 80. In *United States v. Nixon,* one of only a handful of Supreme Court cases to discuss and apply *Burr,* the Court commented that the subpoena duces

---

[17] In Wisconsin, criminal "discovery" is not entirely the parties' procedure because the scope of discoverable materials is set out in statute and compliance with the statute will be enforced by the court.

tecum "was not intended to provide a means of discovery for criminal cases[.]" *United States v. Nixon,* 418 U.S. 683, 698 (1974). The Court construed the federal subpoena duces tecum provision, Federal Rule of Criminal Procedure Rule 17(c), as requiring, among other things, that "the application [be] made in good faith and [ ] not intended as a general 'fishing expedition.' " *Id.* at 699.

¶ 81. As an additional matter of public policy, Schaefer notes that at least one county in Wisconsin, Washington County, conducts a pretrial status hearing where discovery material is customarily exchanged prior to the preliminary examination. We acknowledge the benefits that such an "open file" policy may produce in terms of an increased number of defense waivers of the preliminary examination as well as eventual guilty pleas.[18] As one commentator has observed, however, "[t]hough some prosecutors maintain an 'open file' policy, granting defenders access to the prosecution's case files, this is purely a policy choice on the prosecutor's part, not a legal right of defendants." David Luban, *Are Criminal Defenders Different?,* 91 Mich. L. Rev. 1729, 1738 (1993). No existing state statute or compulsory process provision of either the United States Constitution or the Wisconsin Constitution commands the state to divulge the entirety of police inves-

---

[18] The preliminary examination sometimes serves as a valuable "educational process" for a defendant who is not persuaded by his counsel's opinion that the prosecution has a strong case and that, therefore, a negotiated plea is in the defendant's best interest. 4 Wayne R. LaFave, et al., *Criminal Procedure* § 14.1(e), at 123 (2d ed. 1999). An "open file" may serve the same purpose, provided the state's investigation is relatively complete and persuasive. Requiring the state to expose proof problems in its case is not the same as requiring it to turn over exculpatory evidence.

tigatory files to an accused before an information has been filed against him.

¶ 82. Accordingly, we hold that Schaefer has no right to subpoena police reports and other non-privileged investigatory materials prior to his preliminary hearing under either the Compulsory Process Clause of the Sixth Amendment to the United States Constitution or Article 1, Section 7 of the Wisconsin Constitution.

2. Right to Effective Assistance of Counsel

¶ 83. Finally, Schaefer contends that he is entitled to subpoena police reports and other investigatory materials to safeguard his right to effective assistance of counsel, which also is guaranteed by the Sixth Amendment to the United States Constitution.[19]

¶ 84. A defendant is entitled to the assistance of counsel at all critical stages of prosecution. *United States v. Wade*, 388 U.S. 218, 224 (1967). In *State v. Wolverton*, 193 Wis. 2d 234, 533 N.W.2d 167 (1995), we adopted the view of the Supreme Court that a preliminary hearing is a critical stage in the criminal process. *Wolverton*, 193 Wis. 2d at 252 (citing *Coleman v. Alabama*, 399 U.S. 1, 9 (1970)). Consequently, every defen-

---

[19] The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence." This right to counsel has been applied to the States through the Due Process Clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). The right to counsel has been defined by the United States Supreme Court as the right to effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648, 654 (1984).

dant charged with a felony in Wisconsin is constitutionally entitled to the assistance of counsel at a preliminary hearing. *Wolverton,* 193 Wis. 2d at 253. We also observed, however, that [a]lthough the right to counsel at a preliminary hearing is constitutionally guaranteed, the right to a preliminary hearing is purely statutory. *Id.* at 253 n.11 (citing *State v. Moats,* 156 Wis. 2d 74, 83, 457 N.W.2d 299 (1990)). This factor influences our analysis.

¶ 85. In considering Schaefer's right to effective assistance of counsel at a preliminary examination, we must keep in mind the narrow purpose of the hearing. "[T]he limited scope of the preliminary hearing compresses the contours of the sixth amendment." Wiseman, et al., 9 *Wisconsin Practice: Criminal Practice and Procedure* § 8.12 (1996). "In particular, the defendant's right to present evidence and cross-examine the state's witnesses is severely limited by the summary nature of the preliminary hearing." *Id.*

¶ 86. Schaefer's argument is somewhat unusual because he poses a prospective challenge to effective assistance of counsel. Schaefer argues that his defense counsel cannot *be* effective at a future preliminary examination without access to police reports and other similar materials, not that his counsel *was* ineffective in the past for lack of access to such evidence. To address Schaefer's position on the merits would require this court to hypothesize, in the abstract, what actions by defense counsel are necessary to preserve a criminal defendant's right to effective assistance of counsel at a preliminary examination. To adopt Schaefer's position would require us to create a per se rule that defense counsel is ineffective when counsel fails to subpoena police reports and other similar materials prior to a preliminary examination.

¶ 87. This court operates under the principles adopted by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To establish a claim of ineffective assistance of counsel under *Strickland,* the defendant must demonstrate that: (1) defense counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment; and (2) this deficient performance prejudiced the defense so seriously as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687.

¶ 88. The primary consideration on the first prong is whether a reasonable basis existed for the lawyer's conduct. *State v. Rock,* 92 Wis. 2d 554, 560, 285 N.W.2d 739 (1979). On the second prong, counsel will not be deemed ineffective unless the defendant is *prejudiced* by the lawyer's action or failure to act. *State v. Felton,* 110 Wis. 2d 485, 503, 329 N.W.2d 161 (1983). Since Schaefer's Sixth Amendment challenge is prospective, he must demonstrate that he would be prejudiced per se by defense counsel's inability to subpoena police reports prior to the preliminary hearing. *See, e.g., United States v. Cronic,* 466 U.S. 648, 659–60 (1984) (noting that prejudice is presumed where there is no "likelihood that any lawyer, even a fully competent one, could provide effective assistance" under a particular set of facts).

¶ 89. Schaefer cites *State v. Harper,* 57 Wis. 2d 543, 557, 205 N.W.2d 1 (1973), in which we said that effective counsel "must be equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services." In so holding, we expressly approved of the 1971 American Bar Association Project on Stan-

dards For Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, as a means of evaluating counsel's performance. *See Harper,* 57 Wis. 2d at 557 n.8. Schaefer places emphasis on ABA Standard 4.1:

> 4.1 Duty to investigate. It is the duty of the lawyer to conduct a *prompt* investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.

*Harper,* 57 Wis. 2d at 553 n.3 (emphasis added). He argues that the Standard's use of the word "prompt," coupled with our comment that "[t]he lawyer who is ignorant of the facts of the case incapacitates himself to serve his client effectively," *id.* at 553, should persuade us to hold that police records must be provided to defense counsel before the preliminary examination to preserve the defendant's Sixth Amendment rights.

¶ 90. We cannot adopt Schaefer's argument. *Harper* can be distinguished by the fact the case concerned defense counsel's performance *at trial,* not his investigatory acumen prior to the preliminary examination. *Id.* at 551. ABA Standard 4.1, although calling for defense counsel to "explore all avenues" and "include efforts to secure information in the possession of the prosecution and law enforcement authorities," does not compel us to conclude that Schaefer's attorney would be ineffective if he failed to procure police investigative materials (including police reports) prior to Schaefer's preliminary examination.

324

¶ 91. An attorney's performance at the preliminary examination does not define the level of performance expected of defense counsel at later stages of the proceeding. A "preliminary hearing is not a full evidentiary trial and [ ] the purpose of a preliminary examination is only to determine whether further criminal proceedings are justified." *State v. Akins,* 198 Wis. 2d 495, 512, 544 N.W.2d 392 (1996) (citing *Taylor v. State,* 55 Wis. 2d 168, 172–73, 197 N.W.2d 805 (1972)). Given the limited scope and purpose of the preliminary examination, a defendant's counsel may waive the hearing entirely, or deliberately decline to ask certain questions that would be relevant. We cannot say that Schaefer's counsel would be hand-cuffed and rendered ineffective by failing to procure police reports prior to Schaefer's preliminary examination.

¶ 92. Defense counsel is not barred from conducting significant investigation into the case before the preliminary examination to rebut the plausibility of a witness's story and probable cause. This investigation would likely be based on the details in the complaint and information supplied by the defendant. In this case, nothing prevents counsel from identifying and seeking to interview the complainant's classmates and teammates, as well as Schaefer's co-workers and family. We note that the failure of classmates to corroborate the complainant's claim of sexual assaults would not undermine the plausibility of her story at the preliminary examination. Witness statements that do corroborate the complainant's claims are likely to be disclosed to the defendant before trial.

¶ 93. Schaefer cannot reasonably argue that information contained in March 2006 police reports would offer indispensable information about the

complainant's story that is not stated or implied in the May 2006 criminal complaint. The principal benefits to be gained from review of the police investigation file would be to determine the names of additional persons whom the police interviewed and whether the police had uncovered corroborating evidence. We cannot say that Schaefer's defense counsel will be ineffective at the preliminary examination without this information.

¶ 94. Therefore, we hold that Schaefer has no Sixth Amendment right, based on effective assistance of counsel, to subpoena police reports and other non-privileged materials prior to his preliminary examination.

## IV. CONCLUSION

¶ 95. We conclude that a criminal defendant does not have a statutory or constitutional right to compel the production of police investigation reports and non-privileged materials by subpoena duces tecum prior to the preliminary examination. A criminal defendant who employs the subpoena power in this manner is attempting to engage in discovery without authority in either civil or criminal procedure statutes and in conflict with criminal discovery statutes. Although a reasonable argument can be made for prosecutors to open their files to defendants at an early point in criminal prosecutions, this argument does not translate into an enforceable right to subpoena police investigation reports and nonprivileged materials before a preliminary examination.

¶ 96. Accordingly, we affirm the order of the circuit court granting the State's motion to quash Schaefer's subpoena duces tecum.

*By the Court.*—The order of the circuit court is affirmed.

¶ 97. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The question presented is whether a criminal defendant has a subpoena right to obtain and copy police investigation reports prior to the preliminary hearing.[1]

¶ 98. My answer to the question is "no," and I affirm the order of the circuit court. My answer is the same as that reached by the majority opinion. I reach this answer, however, by a shorter, more direct route than that taken by the majority opinion. My route avoids the majority opinion's case-stretching, law-making, and almost entirely dicta-laden detour through the fields of discovery and preliminary examination in criminal cases.

¶ 99. The majority opinion appears to be more interested in developing law about preliminary examinations and discovery (both before and after an information is filed) than in answering the question of law posed by the instant case. I therefore do not join the majority opinion.

¶ 100. I reason as follows:

> (A) No statute gives the defendant a subpoena right to obtain and copy police investigation reports prior to the preliminary hearing.

---

[1] Pursuant to Wis. Stat. § 970.03(5), the defendant has a statutory right to subpoena witnesses to appear and to produce relevant evidence at his preliminary examination. This right to subpoena a witness at the preliminary examination is not the right the defendant is attempting to exercise in the instant case. The defendant is using the subpoena power in the instant case to obtain evidence *before* the preliminary examination, not *at* the preliminary examination.

(B) The defendant's claimed constitutional rights of compulsory process and effective assistance of counsel do not support the defendant's right to a subpoena for police files under the circumstances of the instant case.

(C) Although the defendant and the third-party brief of amici curiae (the Office of State Public Defender and the Innocence Project) raise serious questions about the reliability and fairness of preliminary examinations and trials when a criminal defendant is not given access to police records prior to the preliminary hearing, I am reluctant to conclude that this case is an appropriate one in which to rule, as a matter of the inherent or superintending powers of this court, that unless good cause exists, law enforcement should give an accused access to police reports before the preliminary examination. The policy arguments of the defendant and the amici do, however, deserve further and serious attention, as the State's brief suggests, from this court in its rule making authority or from the legislature.

¶ 101. I do not address the question whether the defendant may obtain the documents at issue by other means such as a request made under Wisconsin's open records law. The open records law is not raised in the present case. We should not pre-judge issues that are neither raised nor briefed and that may be pending in other cases.[2] Unfortunately, in footnote 4, the majority

---

[2] The responsibility of law enforcement under the public records law is not settled. *See, e.g., Portage Daily Register v. Columbia Co. Sheriff's Dep't,* 2008 WI App 30, 308 Wis. 2d 357, 746 N.W.2d 525 (no petition for review filed). I do not cite this case for its holding or as precedent but as an example showing that the responsibility of law enforcement under the public record law is subject to dispute. In *Portage Daily Register,* the court of appeals concluded that the sheriff's department had responsibility under the public records law independent of the responsibility of the district attorney. The court of appeals

opinion weighs in on this unbriefed and unraised issue, suggesting that the provisions of Wisconsin's open records law are qualified by several provisions, including Wis. Stat. § (Rule) 905.09.[3] The majority opinion misreads § (Rule) 905.09. Although § (Rule) 905.09 creates an evidentiary privilege regarding law enforcement records, the rule explicitly states that this privilege does not apply "to the extent" that law enforcement records are "available by law to a person other than the federal government, a state or subdivision thereof."[4] The

---

further concluded that the sheriff's department's denial of a request to release a report on the ground that a copy of the report had been forwarded to the district attorney's office and was part of an open investigation did not state a sufficient legally specific policy under Wis. Stat. § 19.27 (2005–06).

In *State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 477 N.W.2d 608 (1991), this court held that although there is a presumption that the public has a right to inspect public records unless an exception is found, "the common law provides an exception which protects the district attorney's files from being open to public inspection." *Foust,* 165 Wis. 2d at 433–34. The decision in *Foust* did not address any question pertaining to records in the possession of law enforcement agencies.

Recently, Assistant Attorney General Mary E. Burke advised the Brookfield Assistant Police Chief that the police department's policy of refusing to release any police files that have been forwarded to a prosecuting attorney is not permitted under Wisconsin's public records law. The Brookfield Police Department has apparently rejected this advice. *See* Amy Rinard, *Police Files Get Limited Protection, State Says,* Milwaukee Journal Sentinel Online, Nov. 23, 2007, at http://www.jsonline.com/story/index.aspx?id=689460 (last visited March 20, 2008); Amy Rinard, *Police Ignore Open Records Advice,* Milwaukee Journal Sentinel Online, Dec. 7, 2007, at http://www.jsonline.com/story/index.aspx?id=694473 (last visited March 20, 2008).

[3] Majority op., ¶ 21 n.4.

[4] Wisconsin Stat. § (Rule) 905.09 provides in full:

Judicial Council Committee's Note to the Supreme Court order establishing § (Rule) 905.09 explains that the evidentiary privilege for law enforcement records "is qualified by the phrase 'to the extent available by law' to preserve the supremacy of s. 19.21 permitting examination of public records and documents."[5] *See* 59 Wis. 2d R1, R142–43 (1973). It is the open records law that qualifies § (Rule) 905.09, not the converse as the majority opinion implies.

A

¶ 102. The defendant relies upon Wis. Stat. § 885.01, a civil statute, to argue that his. subpoena is a

---

The federal government or a state or a subdivision thereof has a privilege to refuse to disclose investigatory files, reports and returns for law enforcement purposes except to the extent available by law to a person other than the federal government, a state or subdivision thereof. The privilege may be claimed by an appropriate representative of the federal government, a state or a subdivision thereof.

[5] The Judicial Council Committee's Note reads as follows:

This section has no direct parallel in the proposed Federal Rule 509. A privilege for law enforcement files and records is established by this section. However, the privilege is qualified by the phrase "to the extent available by law" to preserve the supremacy of s. 19.21 permitting examination of public records and documents. The burden is upon the person claiming the privilege to establish in a judicial determination that the public interest outweighs the right of a member of the public to have access to claimed privileged material in the fashion prescribed in *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470, 139 N.W.2d 241 (1965), and *Beckon v. Emery,* 36 Wis. 2d 510, 153 N.W.2d 501 (1967). Normally, the "appropriate representative" to make the claim will be counsel, however, it is possible that disclosure of the privileged material will be sought in proceedings to which the government, state or subdivision, as the case may be, is not a party. Under these circumstances, effective implementation of the privilege requires that other representatives be considered "appropriate."

judicial process authorized by statute. According to the defendant, the civil subpoena statute applies to his criminal proceeding under Wis. Stat. § 972.11(1). Section 972.11(1) provides that the rules of evidence and practice in civil actions shall be applicable in criminal proceedings "unless the context of a section or rule manifestly requires a different construction." Furthermore, § 972.11(1) explicitly states, without any qualification about the context of a section or rule, that chapter 885 "shall apply in all criminal proceedings."[6] The subpoena statute, § 885.01, is part of chapter 885. Even if one reads § 972.11(1) as applying chapter 885 "unless the context of a section or rule manifestly requires a different construction," the context of § 885.01 does not "manifestly require[] a different construction" in the instant case. I therefore turn to § 885.01.

¶ 103. Statutory interpretation in the present case begins with the text of Wis. Stat. § 885.01. Unfortunately, the majority opinion is fairly well along before it cursorily examines the subpoena statute at ¶¶ 41–44.

¶ 104. Wisconsin Stat. § 885.01(1) provides that a subpoena may be issued to require the attendance of witnesses and their production of lawful instruments of evidence in "any action, matter or proceeding or to be examined into before [enumerated persons] or other person authorized to take testimony in the state." Section 885.01(1) provides in full as follows:

885.01. The subpoena need not be sealed, and may be signed and issued as follows:

---

[6] Section 972.11(1) provides in relevant part as follows:

Except as provided in subs. (2) to (4) [on which no one relies in the present case], the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction. . . . Chapters 885 to 895 and 995, except ss. 804.02 to 804.07 and 887.23 to 887.26, shall apply in all criminal proceedings.

(1) By any judge or clerk of a court or court commissioner or municipal judge, within the territory in which the officer or the court of which he or she is the officer has jurisdiction, to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending or to be examined into before any court, magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state.[7]

¶ 105. Section 885.02 prescribes the form of the subpoena, including a subpoena requiring the production of evidence.

¶ 106. The defendant used the standard court form for subpoenas adopted pursuant to Wis. Stat. § (Rule) 971.025 by the Judicial Conference under § (Rule) 758.18(1). The standard court form for subpoenas is substantially the same as the form for subpoenas prescribed in § 885.02.

¶ 107. The subpoena was issued by the clerk of circuit court of Waukesha County.[8] The subpoena requires the witness named (here the chief of police) to appear and give evidence at the type of proceeding described in the subpoena (here the proceeding was simply denominated a "Return of Records").[9] A copy of the subpoena is attached.

---

[7] *See also* Wis. Stat. § 757.01(1) empowering courts of record of this state to issue "process of subpoena, requiring the attendance of any witness . . . ."

[8] Clerks of court may sign subpoenas in blank and deliver them to attorneys for completion. Such a subpoena has the same force and effect as if perfected by the clerk. Wis. Stat. § 757.35.

[9] A box on the subpoena describing the subpoena as a third-party subpoena under Wis. Stat. § 805.07(2) was not checked. Nevertheless, throughout his brief the defendant refers to the subpoena as a third-party subpoena to compel the

¶ 108. The defendant's subpoena does not satisfy the applicable statutes because the subpoena did not require the Brookfield police chief, in the words of Wis. Stat. § 885.01(1), to attend an "action, matter or proceeding pending or to be examined into before" the court. The Return of Records proceeding set forth in the subpoena is not a proceeding known in this state and is not described in the subpoena or briefs. Defense counsel explained in the circuit court that rather than have the subpoenaed records delivered to her office (a procedure for which she cites no authority), she used the subpoena to raise before the circuit court the legal issue of whether she could obtain the records by subpoena and expected the State to move to quash the subpoena.

¶ 109. The defendant does not cite any statute providing for any court proceeding in which a criminal defendant or his or her attorney receives a witness's testimony or documents in or out of court prior to the preliminary examination. The defendant nevertheless argues that a witness or evidence may be subpoenaed for the sole purpose of producing documents prior to the preliminary examination. I disagree with the defendant under the circumstances of the present case.

¶ 110. The defendant's subpoena in the present case seeking documents from a potential witness does not command the witness "to attend an action, matter or proceeding pending or to be examined into before" the commissioner or court under Wis. Stat. § 885.01(1) to be held on July 13, 2006. No hearing was to take place on July 13, 2006. Defense counsel obtained a return date for purposes of completing the subpoena

---

production of police investigatory reports and to obtain copies of all non-privileged material prior to the preliminary examination.

form, but no hearing at which the witness was to appear and testify was scheduled. The circuit court recognized this flaw in the subpoena demand, observing, "I am asked here today . . . to in essence create some type of new beast, some new creature not provided by the statute . . . whether we call it a return of records or a review of records or production of records."[10]

¶ 111. No witness's testimony or lawful instrument of evidence, whether provided by the police chief or any other witness, was required in the Return of Records proceeding. The court commissioner was not to consider any matter in respect to which the Brookfield police chief might have supplied relevant testimony or produced relevant evidence. The sole apparent purpose of the Return of Records proceeding, according to the defendant, was to determine the validity of the defendant's demand that there be a transfer of information and documents from the Brookfield police chief to the defendant and to transfer the information and documents to the defendant if the court determined that the defendant's demand was valid.

¶ 112. The majority opinion interprets the subpoena statutes as I do and concludes as I do: "In short, no subpoena statute authorizes Schaefer's action." Majority op., ¶ 45.[11]

---

[10] The majority opinion explains the "Return of Records" proceeding similarly as follows: "Schaefer is asking this court to establish an additional proceeding, denominated by him as a 'Return of Records,' that will help the defendant prepare for his preliminary examination without requiring any witness to testify." Majority op., ¶ 44.

[11] Furthermore, Wis. Stat. § (Rule) 805.07(1) does not authorize the defendant's subpoena in the present case. Section (Rule) 805.07(1) provides that "[a] subpoena may also be issued by any attorney of record in a civil action or special proceeding

¶ 113. Nevertheless the majority opinion marches onward. Not satisfied with its holding that the defendant has no statutory authority for the subpoena, the majority opinion embarks upon a confusing and ultimately fruitless discussion of the criminal discovery statutes, §§ 971.23 and 971.35(5)(b), declaring that the defendant's subpoena is "inconsistent with our criminal discovery statutes." *See* majority op., ¶ 41.

¶ 114. Interestingly, the defendant lays no claim to a discovery right under either the criminal discovery statute, § 971.23, or the civil statutes, Wis. Stat. §§ 804.01(2) and 804.09, to obtain the materials demanded in his subpoena. I agree with the defendant that neither the civil discovery statutes nor § 971.23, entitled "Discovery and inspection," applies in the present case to authorize the subpoena.

¶ 115. Nevertheless the majority devotes almost one-half of its opinion to analyzing our criminal discovery statutes and the nature and purpose of discovery in general. *See* majority op., ¶¶ 18–40, 46–59. The majority opinion's lengthy discussion of the criminal discovery statute, Wis. Stat. § 971.23, in relation to the present case, ignores the text of § 971.23 and related statutes and will likely confuse the law.

¶ 116. The text of Wis. Stat. § 971.23 is clearly not applicable to the instant case. The defendant is clearly

to compel attendance of witnesses for deposition, hearing or trial in the action or special proceeding . . . ." The subpoena in the present case was not issued by an attorney of record. It was issued by the clerk of the circuit court.

In any event, the subpoena in the present case did not direct the police chief to appear to testify at a deposition, hearing, or trial. The Return of Records was not a deposition, hearing, or trial at which the police chief's testimony was to be given.

correct in not trying to rely on § 971.23, and the majority opinion clearly errs in reaching out to apply the criminal discovery statutes to the present case.

¶ 117. First, motions for discovery under § 971.23 may be made only after the information is filed. *See* § 971.31(5)(b). The subpoena in the present case is not a motion (although the majority opinion at ¶ 54 nearly declares the subpoena a motion).[12] Moreover, no information has been filed in the present case.

¶ 118. Second, Wis. Stat. § 971.23 governs discovery and the district attorney. It governs what a *district attorney* shall disclose to a criminal defendant.[13] The

---

[12] " 'Motion' means an application for an order." Wis. Stat. § (Rule) 971.30(1). The defendant's subpoena is not an application for an order. The subpoena made direct demands of the Brookfield police chief, ostensibly pursuant to statutory authority. The subpoena did not request that a court make demands of the police chief.

The majority opinion concedes that the defendant's subpoena satisfies only "some of the criteria of a 'motion.' " Majority op., ¶ 54. Yet even this weak assertion is plainly incorrect. The majority opinion does not actually identify any "criteria of a 'motion' " satisfied by the defendant's subpoena but instead notes only that "[t]he police chief's failure to honor the subpoena would likely lead to" a motion from the defendant. Majority op., ¶ 54.

[13] With the significant qualification that the holding applies only "where there has been no showing of particularized need for inspection," this court held in *State ex rel. Lynch v. County Court,* 82 Wis. 2d 454, 464–66, 262 N.W.2d 773 (1978), that a defendant does not have a "general right to peruse the prosecutor's files" at the preliminary examination.

During a preliminary examination for seven different defendants, defense attorneys in the *Lynch* case made a general demand for all exculpatory material in the possession of the district attorney. *Lynch,* 82 Wis. 2d at 458. The circuit court

present case involves disclosure by a *police chief* to the defendant. Nothing in the text of § 971.23 governs disclosure by law enforcement agencies to a criminal defendant.

¶ 119. The majority opinion ignores the plain language of Wis. Stat. § 971.23 governing district attorneys and toys with the idea of adding the words "law enforcement officers" to § 971.23, asserting in a footnote that this court is "reluctant to treat the police department and the district attorney's office as separate entities" for purposes of § 971.23(1) because the police and the district attorney are "related" for purposes of this statute.[14] The majority does not explain why the relationship between the two separate entities for purposes of a statutory provision does not mean simply that the two entities should be treated as separate but related entities for purposes of the statute.

¶ 120. The majority opinion errs in musing that law enforcement and the district attorney perhaps may be treated as one. In our system of government, law enforcement and the district attorney's office are two separate entities, with separate functions and subject to different codes of conduct, although the two often work together.[15] TV's *Law & Order* gets it right: "In the

responded by permitting each defendant's attorney to review the district attorney's entire file regarding his or her client. *Lynch,* 82 Wis. 2d at 458. The facts of *Lynch* did not involve, and the *Lynch* court did not address, the question of a defendant's right to obtain records from a law enforcement agency.

[14] Majority op., ¶ 57 n.12.

[15] Law enforcement's task is to objectively gather all the evidence in pursuit of the truth, rather than to attempt to hone in early on a suspect and build a case against him or her. Tunnel vision by law enforcement, that is, incomplete investigation and premature concentration on one suspect, has been shown to

criminal justice system, the people are represented by two separate yet equally important groups: the police, who investigate crime, and the district attorneys, who prosecute the offenders." The legislature has treated these separate entities differently in the criminal discovery statutes, using Wis. Stat. § 971.23 to govern defendants' rights against district attorneys. Section 971.23 does not govern the question of defendants' similar rights against law enforcement agencies. This court should not, as the majority opinion appears to do, disturb the relationship of law enforcement and district attorneys in the Wisconsin criminal justice system.[16]

---

lead to wrongful convictions. *See* Keith A. Findley & Michael S. Scott, *The Multiple Dimensions of Tunnel Vision in Criminal Cases,* 2006 Wis. L. Rev. 291.

For a chilling non-fiction description of non-objective police investigation resulting in an innocent person being convicted and sentenced to death, see John Grisham, *The Innocent Man* (2006).

[16] As a result of the majority opinion, are police departments as well as district attorneys obliged to turn over, upon a defendant's request after the information is filed, all the materials and information set forth in Wis. Stat. § 971.23?

The majority opinion cites *State v. DeLao*, 2002 WI 49, ¶ 21, 252 Wis. 2d 289, 643 N.W.2d 480, for the undisputed proposition that under Wis. Stat. § 971.23, "the State's discovery obligations may extend to information in the possession of law enforcement agencies but not personally known to the prosecutor." *See* majority op., ¶ 57 n.12. The fact that § 971.23(1) imposes upon the district attorney an obligation to disclose information in the possession of law enforcement agencies plainly does not mean that § 971.23(1) governs what law enforcement agencies must disclose to a defendant. The *DeLao* court explained its decision as follows: "Put another way, under certain circumstances, the knowledge of law enforcement officers may be imputed to the prosecutor. . . . The test . . . [is] whether by the exercise of due diligence [the prosecutor] should

¶ 121. The majority opinion twists and bends to avoid the plain language of the discovery statute as the text of the statutes proves inconvenient to the majority's unclear theses about discovery in criminal cases. Because the majority opinion's analysis is so

have discovered it." *State v. DeLao,* 2002 WI 49, ¶¶ 21–22, 252 Wis. 2d 289, 643 N.W.2d 480 (quoted source omitted). *DeLao* does not support the position that in referring to the "district attorney" in § 971.23, the legislature intended to refer to both the "district attorney" and "the police."

*State v. Martinez,* 166 Wis. 2d 250, 260, 479 N.W.2d 224 (Ct. App. 1991), cited in *DeLao* and in n.12 in the majority opinion, does not support the position that the reference in Wis. Stat. § 971.23 is a reference to both the district attorney and the police. *Martinez* is a "good cause" case under the discovery statute. In *Martinez,* the law enforcement agency, not the prosecutor, had control over a tape. The court of appeals noted that many courts and district attorneys entrust the custody and control of evidence to the police even after it has been elevated to formal evidentiary status in a criminal proceeding. The State had no explanation of how the tape that was requested by the prosecutor (in response to defense counsel's request for discovery) was lost after it was deposited at the front desk of the sheriff's department. The State admitted that it had failed to advise defense counsel that the tape was awaiting him at the front desk. *Martinez* stands for the proposition that when the State concedes that the requested information was lost, it has the burden under the criminal discovery statute to show that the State had good cause for its failure to produce the information. *Martinez,* 166 Wis. 2d at 258–59. In *Martinez* the State did not meet its burden. The court of appeals held (1) that the actions of law enforcement in losing the requested tape were visited on the State for purposes of requiring the State to prove "good cause"; and (2) that even if there was a distinction between a police agency that controls the evidence and the State as the prosecuting entity, for purposes of assessing good cause, the prosecutor was not without fault. *See Martinez,* 166 Wis. 2d at 260 & n.7 (which the majority opinion fails to discuss).

badly at odds with the plain language of the criminal discovery statutes, the majority cannot bring itself to reach any actual holding regarding what the criminal discovery statutes mean and how they should be applied to the present case. The majority opinion concludes not that the criminal discovery statutes actually apply to and forbid the defendant's subpoena, but rather that the criminal discovery statutes are "inconsistent" with the subpoena;[17] not that the subpoena is governed by Wis. Stat. § 971.31(5)(b), but rather that it is "arguably" governed by that provision;[18] not that the subpoena is a "motion," but rather that it "satisfies some of the criteria of a 'motion' ";[19] and not that the district attorney and police department are a single entity for purposes of § 971.31(5)(b), but rather that the two entities are "related" and "linked."[20]

¶ 122. The majority opinion's lengthy analysis ultimately comes up empty. In the face of the plain text of the criminal statutes, the majority opinion cannot hold that the criminal discovery statutes apply to the defendant's subpoena.

¶ 123. The majority opinion's contortionist interpretation and slippery phrasing are unnecessary. A straightforward, simple reading of the subpoena statutes demonstrates that the defendant's subpoena was properly quashed by the circuit court. As the majority opinion itself appears to conclude, the criminal discovery statutes do not govern the defendant's subpoena to law enforcement officers; the criminal discovery statutes are fully consistent with the subpoena statutes for

[17] Majority op., ¶ 41.

[18] *Id.*, ¶ 54.

[19] *Id.*

[20] *Id.*, ¶ 57 n.12.

purposes of the instant case; and the criminal discovery statutes need not be discussed at all in the instant case. The majority opinion fabricates a need to "harmonize" the two sets of statutes,[21] but the majority opinion never identifies a single inconsistency between the two sets of statutes that needs harmonization.

¶ 124. The majority opinion's interpretation of our criminal discovery statutes ignores the text of Wis. Stat. § 971.23 and § 971.35(5)(b) and risks creating undue confusion in the law governing discovery and preliminary examinations in criminal cases in this state.

¶ 125. For the reasons I have set forth, I conclude that no statute allows the defendant to have the benefit of the subpoena at issue in the present case. I therefore conclude that the subpoena at issue is not authorized by any statute and is of no force and effect.

B

¶ 126. The defendant argues for access to the police chief's documents under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[22] Indeed, the constitutional argument is the major argument in his brief. He argues that the right to compulsory process includes the right to access and copy police investigation reports prior to the preliminary examination as a matter of the

---

[21] *Id.*, ¶ 56.

[22] Under the confrontation and compulsory process clauses of the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution, the defendant also enjoys a constitutional right to present evidence on his behalf. *State v. St. George,* 2002 WI 50, ¶ 14, 252 Wis. 2d 499, 643 N.W.2d 777.

right to defend and that the right to effective assistance of counsel at the preliminary examination cannot be satisfied without the defense attorney having these materials before the preliminary examination.

¶ 127. The defendant argues that the allegations in the present case are very stale and involve memories of events sixteen years earlier; that under these circumstances he needs the information subpoenaed to prepare for the probable cause preliminary examination; and that the subpoenaed documents are valuable tools that could be used to test the plausibility of witnesses' testimony at the preliminary examination, a critical phase of the prosecution. I do not view this explanation as demonstrating a particularized need for inspection allowed under the *Lynch* case.

¶ 128. I agree with the defendant that the effective assistance of counsel requires the time and ability to investigate and prepare.[23] I conclude, however, that the defendant's inability to access full information prior to the preliminary examination in the instant case does not necessarily implicate the defendant's federal constitutional right to a fair preliminary examination and does not implicate the defendant's right to effective assistance of counsel in light of the purpose and scope of the preliminary examination and a defendant's limited rights at the preliminary examination.

¶. 129. Although the records subpoenaed may be relevant to the probable cause determination, may enable defense counsel to fashion a vital impeachment tool for use in cross-examining the state's witnesses at trial, may preserve testimony favorable to the accused, or may allow preparation of a proper defense at trial, I

___

[23] *See, e.g., State v. Harper,* 57 Wis. 2d 543, 553, 205 N.W.2d 1 (1973).

am not convinced that the defendant's inability to obtain the subpoenaed information before the preliminary examination in the present case rises to a federal constitutionally protected claim. As Professor Mary Prosser has detailed, the United States Supreme Court has limited the pretrial information required to be given to the defendant.[24] The Court has largely limited prosecutors' constitutional discovery obligations to exculpatory evidence and has focused on the adversarial nature of the relationship between the district attorney and defense counsel rather than on the question of the reliability of outcomes in criminal cases.[25]

¶ 130. I cannot conclude that material in law enforcement files would be treated differently than material in the district attorney's files for federal constitutional purposes. I do not explore whether the Wisconsin constitution grants the defendant a right to information before a preliminary examination.

## C

¶ 131. The office of the State Public Defender and the Wisconsin Innocence Project join in a non-party brief, often referred to as an amicus brief. They argue (as the defendant does in his brief) that it is sound public policy to permit a criminal defendant access to police records prior to the preliminary hearing. The amici assert that such a practice is used in other states and communities, and in the federal system.

¶ 132. The amici contend that such a practice (1) would lead to fewer wrongful prosecutions and convictions by better equipping innocent defendants to

---

[24] Mary Prosser, *Reforming Criminal Discovery: Why Old Objections Must Yield to New Realities*, 2006 Wis. L. Rev. 541, 561.

[25] Prosser, *supra* note 24, at 561–64.

challenge the State at the preliminary examination; (2) would help to reinforce the principle that police investigation should be viewed as objective and non-adversarial fact gathering; and (3) would render more fair the preliminary hearing, a proceeding in which the State currently wields an informational advantage, and the trial.

¶ 133. The briefs of the defendant and amici advise the court that some district attorneys in Wisconsin already maintain an "open file" system permitting a defendant broad access to information in their possession and that some states, communities, and federal courts allow defendants access to information early in the process.

¶ 134. Based on these policy arguments and the experience in other jurisdictions, the defendant and amici ask this court to establish a procedure allowing defendants access to non-privileged police records before the preliminary hearing to determine their relevance.[26]

¶ 135. The State argues that any change in procedure should come "through the normal legislative process, or through this court's formal rule-making process."[27] According to the State, "[i]t would be highly inappropriate for this court to use this lone appeal as the vehicle for creating such a radical change in criminal procedure."[28]

¶ 136. The Wisconsin Constitution confers upon this court superintending authority over all Wisconsin courts.[29] We have traditionally construed our superin-

---

[26] The defendant suggests *in camera* inspection of police files.

[27] Brief of Plaintiff-Respondent (State) at 27.

[28] *Id.*

[29] Wis. Const. Art. VII, § 3(1).

344

tending power broadly as authority to control litigation in the courts.[30] Our superintending authority, however, is not lightly invoked.[31] This court ordinarily has refused to modify rules of practice or procedure on appeal.[32]

¶ 137. The defendant and the amici raise troubling questions about the reliability and fairness of preliminary examinations and trials when a criminal defendant is not given access to police records and all non-privileged information early in the process. The criminal justice system must be reliable to convict the guilty and to prevent wrongful conviction of the innocent. The Innocence Projects across the country have demonstrated that wrongful convictions do occur, even in Wisconsin.[33] The ideal in our legal system is that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair."[34] Indeed, "the more we learn about the incidence of wrongful convictions, the less it makes sense to deprive a defendant of access to relevant evidence" at the earliest possible opportunity.[35] The majority opinion acknowledges the wisdom of law enforcement and district attorneys adopting the practice proposed by the defendant. *See* majority op., ¶ 81.

---

[30] *See State v. Jerrell C.J.*, 2005 WI 105, ¶¶ 61, 69, 283 Wis. 2d 145, 699 N.W.2d 110 (Abrahamson, C.J., concurring).

[31] *Jerrell*, 283 Wis. 2d 145, ¶ 67 (Abrahamson, C.J., concurring).

[32] *Mitchell v. State*, 84 Wis. 2d 325, 334, 267 N.W.2d 349 (1978).

[33] *See* Rodney Uphoff, *Convicting the Innocent: Aberration or Systemic Problem?*, 2006 Wis. L. Rev. 739.

[34] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[35] *See* Prosser, *supra* note 24, at 614.

¶ 138. The instant case presents, however, a question of first impression, not a question that this court has had occasion to consider or address previously.[36] I am not convinced that this case is an appropriate one in which to rule, as a matter of the inherent or superintending power of this court, that unless good cause exists, law enforcement should give an accused access to police reports before a preliminary examination. Under these circumstances, I therefore conclude that this court should not in the instant case invoke its superintending authority by establishing a procedure allowing defendants access to non-privileged law enforcement records prior to the preliminary hearing.

¶ 139. For the reasons set forth, I write separately. My reasoning and conclusions can be summarized as follows:

(A) None of the subpoena statutes and no other statute gives a subpoena right to the defendant to obtain and copy police investigation reports prior to the preliminary hearing.

(B) The defendant's claim of a constitutional right to compulsory process or effective assistance of counsel do not support the defendant's right to a subpoena for police files under the circumstances of the instant case.

(C) Although the defendant and the third-party brief of amici curiae (the Office of State Public Defender and the Innocence Project) raise serious questions about the reliability and fairness of preliminary examinations and trials when a criminal defendant is

---

[36] The defendant himself acknowledges that no reported Wisconsin case has considered the defense use of a subpoena *duces tecum* to the police for their investigative reports prior to a preliminary hearing . . . ." Brief and Appendix of Defendant-Appellant at 13.

not given access to police records prior to the preliminary hearing, I am reluctant to conclude that this case is an appropriate one in which to rule, as a matter of the inherent or superintending powers of this court, that unless good cause exists, law enforcement should give an accused access to police reports before the preliminary examination. The policy arguments of the defendant and the amici do, however, deserve further and serious attention, as the State's brief suggests from this court in its rule making authority or from the legislature.

¶ 140. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.

STATE OF WISCONSIN, CIRCUIT COURT, ___HAUKESHA_____ COUNTY

| | | For Official Use |
|---|---|---|

**Case Caption**

_____State of Wisconsin_____

-vs-

_____Ronald Schaefer_____

**Subpoena and
Certificate of Appearance**
Duces Tecum

Case No. ___06 CF 621___

The State of Wisconsin to (Witness Name and Address):
D

Chief of Brookfield Police Department
or Designee.
 2100 N. Calhoun Road
 Brookfield, WI 53045

| Service Information | | |
|---|---|---|
| Date Served | Time Served | Fee Charged |
| | | $ |
| Method of Service | | Witness Fee Enclosed |
| ☐ Personal | | |
| ☐ Substitute | | $ |
| Serving Agency | | |
| | | |
| Served By (Signature) | | |

**You are required to appear and give evidence:**

**APPEARANCE INFORMATION**

| Date | Time | Location (Include Room Number) |
|---|---|---|
| 7/13/06 | 1:30 PM | Waukesha County Courthouse
515 W. Moreland Blvd, CG49
Waukesha, WI 53188 |
| Presiding Official
Commissioner Martin Binn | | Type of Proceeding |
| On Behalf Of
The Defendant | | Return of Records |

☒ You are further required to bring with you the following A complete copy of all reports, memorandums, witness interviews and any records relate to the investigation and arrest of Ronald Schaefer on suspected criminal offenses or relating to the alleged sexual assault of Kerry M. DOB 4/6/76 in 1990

☐ This is a third-party subpoena. Unless all parties agree otherwise, do not provide any requested items before the date and time of the above proceeding

**Failure to appear may result in punishment for contempt, which may include monetary penalties, imprisonment and other sanctions.**

| If you have any questions about this subpoena, please contact: | Issuing Official |
|---|---|
| Name (Type or Print)
Kathleen Stilling | By |
| Title
Attorney | Telephone Number
262-021-0999 | Carolyn T. Evenson
Signature |
| Address
400 N. Executive Drive Suite 205
Brookfield, WI 53005 | Date |

**For Court Use Only**

| Witness Information | | Witness Certificate of Appearance | |
|---|---|---|---|
| Telephone Number | | Date Witness Appeared | Mileage |
| Address Correction | | Signature of Witness | |

GF-126, 11/99 Subpoena/Certificate of Appearance §§905.07, 885.02 and 885.80 Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material

348